Steven D. Jerome (#018420)
Rebekah L.W. Elliott (#032667)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: sjerome@swlaw.com
relliott@swlaw.com
Attorneys for RREF CB SBL II-AZ RCG, LLC

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>ROBERT C. GUTIERREZ and ROSE MARIE GUTIERREZ,<br><br>Debtors. | Proceedings Under Chapter 13<br><br>Case No. 4:16-bk-11212-BMW<br><br>**OBJECTION TO CHAPTER 13 PLAN AND APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSES**<br><br>**[Relates to D.E. No. 20]** |

RREF CB SBL II-AZ RCG, LLC ("**RREF**"), a secured creditor in the above-captioned Chapter 13 proceeding ("**Bankruptcy Case**") of Robert C. Gutierrez and Rose Marie Gutierrez (collectively, the "**Debtors**"), hereby objects to the Debtors' "Chapter 13 Plan and Application for Payment of Administrative Expenses" [D.E. No. 20] (the "**Plan**").

The Court should deny confirmation of the Plan because it fails to comply with the requirements of 11 U.S.C § 1325. This Objection is supported by the following Memorandum of Points and Authorities, the record in *RREF CB SBL II-AZ RCG, LLC, v. Robert C. Gutierrez and Rose Marie Gutierrez*, Case No. C20136880, in Pima County Superior Court (the "**Deficiency Action**"), and the entire record in the Bankruptcy Case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. RELEVANT FACTUAL BACKGROUND

#### A. RREF's Judgment and Collection Efforts

1. On July 7, 2014, the court in the Deficiency Action entered a money judgment in favor of RREF and against the Debtors in the total amount of $272,814.19, plus accruing interest on the unpaid principal balance on and after May 2, 2014 at a rate of $155.75 per day until the total amount due and owing under the loan is paid in full (the "**Judgment**"). *See* Judgment attached hereto as **Exhibit A**.

2. On July 15, 2014, RREF recorded the Judgment in the Pima County Recorder's Office at Sequence No. 20141960307. *See id*.

3. The Debtors failed to make any payments on the Judgment.

4. In an effort to collect on its Judgment, on August 22, 2016, RREF filed its "Application for a Writ of General Execution" in the Deficiency Action. On that same day, the clerk of the Pima County Superior Court issued a "Writ of General Execution Against Robert C. Gutierrez and Rose Marie Gutierrez" (the "**Writ of Execution**") in the Deficiency Action.

5. The Pima County Sheriff's Department served the Writ of Execution on the Debtors on September 28, 2016. *See* Notice of Service attached hereto as **Exhibit B**.

6. As of September 29, 2016, the total amount due and owing on the Judgment, including accrued interest, was $410,029.94. *See* POC 3.

#### B. The Debtors' Bankruptcy Case

7. On September 29, 2016, one day after service of the Writ of Execution, the Debtors filed their voluntary petition for relief under Chapter 13 and commenced the Bankruptcy Case. On that same day, RREF's counsel informed the Pima County Sheriff's Department of this Bankruptcy Case and requested that they return the Writ of Execution to the court.

/ / / /

/ / / /

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

8. Almost a month after filing their petition for relief, on October 24, 2016, the Debtors filed their Plan and Schedules. *See* D.E. Nos. 17 and 20. As explained more fully below, these filings contain several inconsistencies and misrepresentations.

***1. <u>The Debtors' Schedules</u>***

9. The Debtors list the value of their residence located at 2240 N. Via De Suenos, Tucson, AZ 85745 (the "**N. Via De Suenos Property**") as $525,000.00 in their Schedules. *See* D.E. No. 17 (Schedule A/B). The Debtors provide no basis for this valuation. *See id*. According to a Residential Broker Price Opinion completed on June 2, 2016 (the "**Broker Price Opinion**"), the value of the N. Via De Suenos Property is no less than $695,000.00.[1] *See* Broker Price Opinion attached hereto as **Exhibit C**.

10. Additionally, the Debtors schedule two mortgages on the N. Via De Suenos Property in their Schedule D: (1) a first mortgage with Wells Fargo in the amount of $206,782.00, and (2) a second mortgage with BBVA Compass Bank in the amount of $254,953.00. *See* D.E. No. 17 (Schedule D). However, the Debtors' inclusion of the BBVA Compass Bank mortgage is likely an inaccuracy, as the mortgage fails to appear on two separate title reports of the N. Via De Suenos Property. *See* Foreclosure Property Report dated April 20, 2016, and C2C Title Services Report dated November 15, 2016, attached collectively hereto as **Exhibit D.** Based upon the title reports, it appears that the BBVA Compass Bank loan was assigned to Wells Fargo in 2011. *See id*. Thus, the Wells Fargo mortgage is likely the only mortgage on the N. Via De Suenos Property.[2]

11. Without the BBVA Compass Bank mortgage, and using a value of $695,000.00, the Debtors have at least $488,000.00 in equity in the N. Via De Suenos Property ($695,000.00 – $206,782.00). *See* Exhibit C; D.E. No. 17 (Schedule D). After subtracting the $150,000.00 homestead exemption the Debtors claim on the N. Via De

[1] RREF recently engaged a certified residential appraiser and intends to have a formal appraisal of the N. Via De Suenos property performed.

[2] In a letter to Debtors' counsel dated November 15, 2016, RREF requested supporting documentation for the two mortgages listed on the N. Via De Suenos Property. As of the date of this filing, Debtors' counsel is looking into this issue but has not yet provided any supporting documentation for the BBVA Compass Bank mortgage.

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

Suenos Property, at least $338,000.00 of equity remains for the benefit of creditors. *See* D.E. No. 17 (Schedule C).

12. The Debtors schedule the value of their investment property located at 5832 S. 6th Ave., Tucson, AZ 85706 (the "**S. 6th Ave. Property**") as $143,000.00. *See* D.E. No. 17 (Schedule A/B). Additionally, the Debtors schedule one mortgage on the S. 6th Ave. Property in the amount of $64,458.00. *See id*. (Schedule D). Thus, based on their Schedules, the Debtors have approximately $78,000.00 in equity in the S. 6th Ave. Property ($143,000.00 – $64,458.00). The Debtors did not claim any exemptions on their equity in the S. 6th Ave. Property. *See id*. (Schedule C).

13. In their Schedules, the Debtors list RREF as an unsecured creditor with a claim in the amount of $300,000.00. *See* D.E. No. 17 (Schedule E/F).[3] This misrepresents both the amount and the classification of RREF's claim. Approximately, $395,921.00[4] of RREF's claim is secured by the Debtors' equity in both of the N. Via De Suenos Property and the S. 6th Ave Property. *See* POC 3.

14. The Debtors claim they receive regular income of $2,074.00 a month from "rental property, operating a business, profession or farm," in their Schedules. *See* D.E. No. 17 (Schedule I). However, they fail to attach statements to support this amount of net income. *See id*.

### 2. ***The Debtors' Plan***

15. In their Plan, the Debtors list the value of the S. 6th Ave. Property as $80,000.00. *See* D.E. No. 17. This valuation is inconsistent with the $143,000.00 listed in their Schedules and removes $63,000.00 in equity from the Plan. *See* D.E. 20, at 6.

16. Under the Plan, the Debtors propose that secured creditors will retain their liens until payment of the underlying debt or upon discharge, whichever occurs first. *See id*., at 4.

---

[3] As discussed more fully under Section II.D., if RREF is unsecured as the Debtors contend, the Debtors are not eligible for Chapter 13 relief. *See* 11 U.S.C. § 109(e).

[4] The secured amount of RREF's claim accounts for prior liens as listed in the Debtors' Schedules.

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

17. The Plan fails to list RREF as a secured creditor or provide treatment for RREF's claim. *See id*., at 3.

18. The Plan lists the Debtors' value in nonexempt property as only $10,742.00. *See id*., at 6.

19. The Plan proposes total payments of $20,700.00, with only $740.00 distributed *pro rata* to unsecured, nonpriority creditors. *See id*.

## II. ARGUMENT

To be confirmable, a Chapter 13 plan must satisfy the requirements of 11 U.S.C. § 1325. The Debtors' Plan fails to meet the requirements for confirmation under 11 U.S.C. § 1325(a) because, among other things: (A) the Debtors failed to propose the Plan, and file the Bankruptcy Case, in good faith; (B) the Plan fails to provide treatment for RREF's secured claim; (C) the Plan pays unsecured creditors less than they would receive under Chapter 7; and (D) the Debtors are ineligible for Chapter 13 relief under 11 U.S.C. § 109(e). Accordingly, the Court should enter an order denying confirmation of the Plan.

### A. The Plan Fails Under 11 U.S.C. § 1325(a)(3) as the Debtors Filed the Bankruptcy Case and Plan in Bad Faith.

As a preliminary matter, the Plan's terms are contrary to Sections 1325(a)(3) and (7) which require that a Chapter 13 plan be proposed in good faith and not by any means forbidden by law, and that the action of the debtor in filing the petition was in good faith. *See* 11 U.S.C. § 1325(a)(3) and (7). The burden of establishing good faith under Section 1325(a) is on the Debtors. *Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 352 (B.A.P. 9th Cir. 1997). The Bankruptcy Appellate Panel for the Ninth Circuit has instructed courts to consider the following non-exclusive factors to determine whether a Chapter 13 plan is proposed in good faith:

1. the amount of the proposed payments and the amounts of the Debtor's surplus;
2. the Debtor's employment history, ability to earn and likelihood of future increases in income;
3. the probable, or expected duration of the plan;
4. the accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

debt, and whether any inaccuracies are an attempt to mislead the Court;

5. the extent of preferential treatment between classes of creditors;
6. the extent to which secured claims are modified;
7. the existence of special circumstances, such as inordinate medical expenses;
8. the frequency in which the Debtor has sought relief under the Bankruptcy Reform Act;
9. the motivation and sincerity of the Debtor in seeking Chapter 13 relief; and
10. the burden in which the Plan's administration would place upon the Trustee.

*Id*. at 352-53 (citing *In re Warren*, 89 B.R. 87, 93 (B.A.P. 9th Cir. 1988)).

Here, the Plan was not proposed in good faith because, among other things: (1) the Debtors' Plan contains inaccuracies that are likely an attempt to mislead the Court and deflate the Debtors' equity in non-exempt property, and (2) the Debtors' motivation for seeking Chapter 13 relief is not sincere.

### ***1. The Plan's Inaccuracies are likely an Attempt to Mislead the Court and Undervalue the Debtors' Equity in Non-exempt Property.***

The inaccuracies and inconsistencies in the Debtors' Plan strongly suggest a bad-faith motive for this Bankruptcy Case. The Debtors' Schedules include an alleged second mortgage on the property with BBVA Compass Bank. *See* D.E. No. 17 (Schedule D). As discussed above, the BBVA Compass Bank Mortgage fails to appear on two separate title reports of the N. Via De Suenos Property. *See* Exhibit D**.** Thus, the BBVA Compass Bank mortgage either: (1) is not a valid secured debt owed by the Debtors; (2) is not perfected[5]; or (3) the title reports are incorrect. Through including the alleged BBVA Compass Bank mortgage, the Debtors' Plan contemplates that the Debtors have no equity in the N. Via De Suenos Property when, in fact, the Debtors likely have at least $488,000.00 in equity. This is concerning, and the Debtors need to disclose the basis for the claimed BBVA Compass Bank mortgage.

[5] Even if this mortgage exists, it appears to be unperfected and, thus, avoidable. *See* 11 U.S.C. § 544.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Additionally, the Debtors' Plan values the S. 6th Ave. Property at $63,000.00 less than the property is valued in their Schedules, with no explanation for this decrease. Using the valuation as listed in the Schedules, the Debtors have approximately $78,542.00 in equity in the S. 6th Ave. Property for which their Plan does not account. However, even using the $80,000.00 valuation, the Plan fails to account for the Debtors' $15,542.00 in equity from the S. 6th Ave. Property by stating that the Debtors' value in nonexempt property is only $10,742.00. These inaccuracies and inconsistencies strongly suggest that the Debtors are intentionally deflating their equity in non-exempt property in an effort to avoid payments to creditors. This is the very essence of bad-faith. *See In re Padilla*, 213 B.R. at 352-53.

Furthermore, because the Debtors propose to pay all of their mortgages outside of the Plan and unsecured, nonpriority creditors receive a total of $740.00 (essentially, nothing), the Plan proposes, effectively, to pay one claim. *See id*. Thus, this Plan does not present a serious effort at reorganization. Quite the contrary, the Chapter 13 Plan strongly suggests that the Debtors filed the Bankruptcy Case in an effort to keep all of their assets rather than using them to pay creditors. This scheme constitutes "bad-faith" under 11 U.S.C. § 1325(a)(3). *See In re Warner*, 115 B.R. 233, 238 (Bankr. C.D. Cal. 1989) (denying confirmation and dismissing petition because chapter 13 plan proposed to pay only a single creditor and no unsecured creditors, even though the debtor had the ability to make *some* payments to other unsecured creditors). Consequently, the Debtors' Plan is unconfirmable under 11 U.S.C. § 1325(a)(3).

### ***2. The Debtors' Motivation for Seeking Chapter 13 Relief is Not Sincere.***

Additionally, the timing of the Debtors' bankruptcy petition suggests that the Debtors sought relief under Chapter 13 solely to thwart RREF's legitimate collection efforts. "A good faith test… should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purpose of Chapter 13." *In re Chinichian*, 784 F.2d 1440, 1444 (9th Cir. 1986) (citing H.R. Rep. No. 96-

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

1195, Comm. on the Judiciary, 96th Cong., 2d Sess. 24-25 (1980)). In *Chinichian*, the Ninth Circuit affirmed a bankruptcy court ruling and district court affirmation that the debtor's plan was filed in bad faith, where the bankruptcy judge concluded that the real purpose of the plan was to defeat state court litigation and such purpose, along with the strategic timing of filing bankruptcy to frustrate that state court litigation, violated the "spirit of [Chapter 13]." 784 F.2d at 1445.

For reasons similar to those in *Chinichian*, neither the Debtors' Plan nor the Bankruptcy Case was proposed in good faith. Consequently, the Plan cannot be confirmed. To illustrate, the Debtors filed their petition one day after being served with the Writ of Execution and did not file their Schedules or Plan until almost a month later – suggesting that the Debtors were not contemplating bankruptcy relief prior to receiving the Writ of Execution. As explained above, it also appears that the Debtors have intentionally misrepresented the value of their equity in the N. Via De Suenos and S. 6th Ave. properties in their Plan in an attempt to avoid paying creditors. Furthermore, as explained below, the Debtors fail to provide treatment for RREF's claim. All of these things evidence the Debtors' intentions to use this Bankruptcy Case to avoid making payments to RREF. In short, the Debtors cannot meet their burden of good faith under Section 1325(a)(7). Accordingly, the Court should deny confirmation of the Debtors' Plan.

**B. <u>The Plan Fails Under 11 U.S.C. § 1325(a)(5) Because it Does Not Provide Treatment for RREF's Secured Claim.</u>**

The Plan fails because it does not provide treatment for RREF's secured claim. Section 1325(a)(5)(B)(ii) requires that a Chapter 13 Plan provides that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." Here, as explained above, RREF has a secured claim in the amount of approximately $395,000.00.[6] However, the

[6] RREF objects to the valuation of its secured claim in the Plan and reserves its rights to inspect and appraise both the N. Via De Suenos Property and the S. 6th Ave.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Plan treats RREF as a nonpriority, unsecured creditor and proposes only to pay RREF its *pro rata* share of $740.00. This is clearly not the value of the allowed amount of its claim,[7] and the Plan does not propose to strip RREF's judgment lien. *See* D.E. 20, at 4. The Plan, therefore, fails under § 1325(a)(5) and is unconfirmable. Accordingly, the Court should deny confirmation of the Debtors' Plan.

### C. The Plan Fails Under 11 U.S.C. § 1325(a)(4) Because it Proposes to Pay Unsecured Creditors Less Than They Would Receive Under Chapter 7.

The Plan fails because it proposes to pay unsecured creditors less than they would receive under Chapter 7. The Debtors' Schedules disclose equity of $78,542.00 in the S. 6th Ave. Property, but the Debtor's Chapter 13 Plan does not propose to use any of that equity to pay unsecured creditors. *See* D.E. Nos. 17 (Schedules A/B, D) and 20, at 6. Even using the $80,000.00 valuation as listed in the Plan, the Plan fails to account for all of the Debtors' equity from the S. 6th Ave. Property, noting that the Debtors' total value in nonexempt property is only $10,742.00. Furthermore, as explained above, it appears that the BBVA Compass Bank mortgage is either non-existent or avoidable as unperfected under 11 U.S.C. § 544. Thus, in a Chapter 7, the unsecured creditors would be entitled to at least some of the Debtors' equity in both the N. Via De Suenos Property and the S. 6th Ave. Property. The Plan, therefore, fails under § 1325(a)(4). *See In re Gibson*, 415 B.R. 735 (Bankr. D. Ariz. 2009) (finding that a proposed plan amendment did not satisfy § 1325(a)(4) because it did not propose to pay creditors as much as they would have received in a chapter 7 liquidation). Accordingly, the Court should deny confirmation of the Debtors' Plan.

/ / / /

/ / / /

---

Property under Rule 2084-9(c) of the Local Rules of Bankruptcy Procedure for the District of Arizona.

[7] Even including the BBVA Compass Bank mortgage – which may be an intentional misrepresentation – the Plan still fails to account for the Debtors' equity from the S. 6th Ave. Property and RREF's secured status.

### D. The Plan Fails Under 11 U.S.C. § 1325(a)(1) Because the Debtors are Ineligible for Chapter 13 Relief under 11 U.S.C. § 109(e).

The Plan fails because the Debtors do not appear to be eligible to be Chapter 13 debtors. Section 109(e) provides that "[o]nly an individual with regular income that owes, on the date of filing the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated secured debts of less than $1,149,525…. may be a debtor under chapter 13 of this title." The Debtors' Schedules list RREF as an unsecured creditor with a claim in the amount of $300,000.00. As shown above, this amount fails to account for the accrued interest Debtors owe under the Judgment thereby underestimating the value of RREF's claim by $110,029.94 ($410,029.94 – $300,000.00).

If RREF's claim is wholly unsecured, as the Debtors contend, RREF's claim alone exceeds the unsecured debt limit under Section 109(e). In addition, the underestimation of RREF's claim raises serious questions about the Debtors' other claim estimations. Furthermore, it is not clear that the Debtors receive "regular income" in the amount of $2,074.00 because they have not attached any proof of this income to their Schedules. *See* D.E. No. 17 (Schedule I). The Plan, therefore, does not comply with the provisions of the Bankruptcy Code and fails under § 1325(a)(1). Accordingly, the Court should deny confirmation of the Debtors' Plan.

## III. CONCLUSION

For the foregoing reasons, the Plan fails to meet the requirements for confirmation under 11 U.S.C. § 1325, and RREF respectfully requests that the Court deny confirmation of the Debtors' Plan. RREF expressly reserves all rights to supplement this Objection and/or to file additional objections to the Plan or any other plan filed by the Debtors along with any amendment or modification thereto.

/ / / /

/ / / /

/ / / /

/ / / /

Snell & Wilmer L.L.P. LAW OFFICES One Arizona Center, 400 E. Van Buren, Suite 1900 Phoenix, Arizona 85004-2202 602.382.6000

DATED this 22nd day of November, 2016.

SNELL & WILMER L.L.P.

By: /s/ *Rebekah L.W. Elliott*
Steven D. Jerome
Rebekah L.W. Elliott
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for RREF CB SBL II-AZ RCG, LLC

Copy of the foregoing served by First Class U.S. Mail or electronic notification this 22nd day of November, 2016, to:

Eric Ollason
182 N Court Ave.
Tucson, AZ 85701
eollason@182court.com
Attorney for Debtor

Dianne C. Kerns
7320 N. La Cholla #154 PMB 413
Tucson, AZ 85741-2305
Chapter 13 Trustee

Lakshmi Jagannath
McCarthy & Holthus, LLP
8502 E. Via De Ventura, #200
Scottsdale, AZ 85258
bknotice@mccarthyholthus.com
Attorneys for Wells Fargo Bank, N.A.

Kristin E Mcdonald
McCarthy & Holthus, LLP
8502 E. Via de Ventura, Suite 200
Scottsdale, AZ 85258
kmcdonald@mccarthyholthus.com
Attorneys for JPMC Specialty Mortgage LLC f/k/a WM Specialty Mortgage LLC

/s/ Janice L. Rogalla

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000