Steven D. Jerome (#018420)
Rebekah L.W. Elliott (#032667)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: sjerome@swlaw.com
      relliott@swlaw.com
Attorneys for RREF CB SBL II-AZ RCG, LLC

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>ROBERT C. GUTIERREZ and ROSE MARIE GUTIERREZ,<br><br>    Debtors. | Proceedings Under Chapter 13<br><br>Case No. 4:16-bk-11212-BMW<br><br>Contested Matter |
| RREF CB SBL II-AZ RCG, LLC,<br><br>    Movant,<br><br>v.<br><br>ROBERT C. GUTIERREZ and ROSE MARIE GUTIERREZ,<br><br>    Respondents. | **MOTION TO CONVERT CASE TO CHAPTER 7 PROCEEDING PURSUANT TO 11 U.S.C. § 1307(c)**<br><br>Date:<br>Time:<br>Location:  230 N. First Ave.<br>           3rd Floor, Courtroom 301<br>           Phoenix, AZ 85003 |

Pursuant to 11 U.S.C. § 1307(c), RREF CB SBL II-AZ RCG, LLC ("**RREF**"), a secured creditor in the above-captioned Chapter 13 proceeding ("**Bankruptcy Case**"), hereby moves the Court to convert this Bankruptcy Case to a proceeding under Chapter 7 of the Bankruptcy Code. Cause for conversion exists under 11 U.S.C. § 1307(c) because the Debtors: (1) have not proposed and, more importantly, cannot propose a confirmable plan under 11 U.S.C. §1325) and (2) filed this Bankruptcy Case in bad faith. In the alternative, the Debtors do not meet the eligibility requirements for Chapter 13 relief.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1       This Motion is supported by the following Memorandum of Points and Authorities

2   and the entire record in the Bankruptcy Case.

3   <div align="center">**MEMORANDUM OF POINTS AND AUTHORITIES**</div>

4   **I.    INTRODUCTION**

5       The Debtors[1] in this case have manipulated the bankruptcy process in an attempt to

6   avoid creditors and emerge from bankruptcy unscathed.  In doing so, the Debtors made

7   misrepresentations to this Court when signing their statements and schedules and filing

8   their Plan.  Through including an undocumented, unrecorded, alleged second mortgage

9   and proposing to pay such mortgage outside of the Plan, the Debtors have attempted to

10  conceal equity from their estate.  Additionally, the Debtors misrepresented the value and

11  secured status of RREF's claim.

12      When viewing the Debtors' filings in light of these misrepresentations, it is clear

13  that the Debtors:  (1) cannot propose a Plan that is capable of satisfying the requirements

14  of 11 U.S.C § 1325 and (2) filed this Bankruptcy Case in bad faith.  In the alternative, the

15  Debtors are ineligible for Chapter 13 relief.  All of the foregoing reasons constitute

16  sufficient cause for converting a case under section 1307(c) of the Bankruptcy Code.

17  There is simply no reason to allow the Debtors to remain in Chapter 13 and delay

18  payments to creditors by proposing unconfirmable plans.  Rather, it is in the best interest

19  of all creditors to convert this Bankruptcy Case to a proceeding under Chapter 7.

20  Accordingly, RREF requests that the Court convert this Bankruptcy Case to a proceeding

21  under Chapter 7.

22  **II.    RELEVANT FACTUAL BACKGROUND**

23      A.    **RREF's Judgment and Collection Efforts.**

24      1.    On July 7, 2014, the court in the Deficiency Action entered a Judgment in

25  favor of RREF and against the Debtors in the total amount of $272,814.19, plus accruing

26

27  [1]    Unless otherwise defined, all capitalized terms herein have the same meaning as that
prescribed in RREF's "Objection to Chapter 13 Plan and Application for Payment of

28  Administrative Expenses," D.E. No. 27, (the "**Objection**").

interest on the unpaid principal balance on and after May 2, 2014 at a rate of $155.75 per day until the total amount due and owing under the loan is paid in full. *See* Objection, Exhibit A.

2.     On July 15, 2014, RREF recorded the Judgment in the Pima County Recorder's Office at Sequence No. 20141960307. *See id.*

3.     The Debtors failed to make any payments on the Judgment.

4.     In an effort to collect on its Judgment, on August 22, 2016, RREF filed its Writ of Execution in the Deficiency Action.

5.     The Pima County Sheriff's Department served the Writ of Execution on the Debtors on September 28, 2016. *See* Objection, Exhibit B.

6.      As of September 29, 2016, the total amount due and owing on the Judgment, including accrued interest, was $410,029.94. *See* POC 3.

**B.     The Debtors' Bankruptcy Case.**

7.     On September 29, 2016, one day after service of the Writ of Execution, the Debtors filed their voluntary petition for relief under Chapter 13 and commenced the Bankruptcy Case. On that same day, RREF's counsel informed the Pima County Sheriff's Department of this Bankruptcy Case and requested that they return the Writ of Execution to the court.

8.     Almost a month after filing their petition for relief, on October 24, 2016, the Debtors filed their Plan and schedules. *See* D.E. Nos. 17 and 20. As explained more fully below, these filings contain several inconsistencies and misrepresentations.

*1.     The Debtors' Schedules.*

9.     The Debtors list the value of their residence located at 2240 N. Via De Suenos, Tucson, AZ 85745 (the "**N. Via De Suenos Property**") as $525,000.00 in their schedules. *See* D.E. No. 17 (Schedule A/B). The Debtors provide no basis for this valuation. *See id.* According to RREF's Broker Price Opinion, the value of the N. Via De

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1    Suenos Property is no less than $695,000.00.[2]  *See* Objection, Exhibit C.

2        10.    Additionally, the Debtors scheduled two mortgages on the N. Via De

3    Suenos Property in their Schedule D:  (1) a first mortgage with Wells Fargo in the amount

4    of $206,782.00, and (2) a second mortgage with BBVA Compass Bank in the amount of

5    $254,953.00.  *See* D.E. No. 17 (Schedule D).

6        11.    The Debtors' inclusion of the BBVA Compass Bank mortgage is likely an

7    inaccuracy, as the mortgage fails to appear on two separate title reports of the N. Via De

8    Suenos Property.  *See* Objection, Exhibit D.

9        12.    Based upon the information currently available to RREF after a brief search

10   of the Pima County Recorder's Office's online records, it appears the Debtors had two

11   separate lines of credit with BBVA Compass Bank, acquired in 2002 and 2003, that were

12   both secured by the N. Via De Suenos Property (the "**Home Equity Lines of Credit**").

13   *See* 2002 and 2003 Home Equity Lines of Credit attached hereto, collectively, as **Exhibit**

14   **1**.

15       13.    BBVA Compass Bank released the deed of trust securing the Debtors' 2002

16   Home Equity Line of Credit on November 3, 2003.  *See* Release of Recorded Lien

17   attached hereto as **Exhibit 2**.

18       14.    On March 24, 2005, BBVA Compass Bank recorded a Deed of Trust

19   securing the Debtors' obligations under a promissory note in the principal amount of

20   $270,000.00 (the "**BBVA Compass Bank Deed of Trust**").  *See* Deed of Trust attached

21   hereto as **Exhibit 3**.

22       15.    On October 17, 2005, noting that the Debtors' obligations in the amount of

23   $243,093.92 had been paid in full on March 23, 2005, BBVA Compass Bank released the

24   deed of trust securing the Debtors' 2003 Home Equity Line of Credit.  *See* Release and

25   Reconveyance by Title Insurer of Deed of Trust attached hereto as **Exhibit 4**.

26

27   _____

28   [2]    RREF recently engaged a certified residential appraiser and intends to have a
     formal appraisal of the N. Via De Suenos property performed.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

16. The BBVA Compass Deed of Trust was assigned to Wells Fargo on September 16th, 2011. *See* Corporate Assignment and Deed of Trust attached hereto as **Exhibit 5**. Thus, the Wells Fargo mortgage is likely the only mortgage on the N. Via De Suenos Property.

17. Without the BBVA Compass Bank mortgage, and using a value of $695,000.00, the Debtors have at least $488,000.00 in equity in the N. Via De Suenos Property ($695,000.00 – $206,782.00). *See* Exhibit C; D.E. No. 17 (Schedule D). After subtracting the $150,000.00 homestead exemption the Debtors claim on the N. Via De Suenos Property, at least $338,000.00 of equity remains for the benefit of creditors. *See* D.E. No. 17 (Schedule C).

18. In their schedules, the Debtors list RREF as an unsecured creditor with a claim in the amount of $300,000.00. *See* D.E. No. 17 (Schedule E/F). This misrepresents both the amount and the classification of RREF's claim.

19. RREF has a secured claim in the amount of $395,921.00[3] and an unsecured claim in the amount of $14,108.94. *See* POC 3.

20. The Debtors' scheduled a total of $350,362.00 in unsecured debt in Schedule E/F. *See* D.E. No. 17 (Schedule E/F).

21. The Debtors' also scheduled several unsecured debtors with claims of "unknown" value. *See id*.

22. The Debtors claim they receive $4,412.00 in total monthly income. *See id*. (Schedule I).

23. The Debtors scheduled $4,290.00 in monthly expenses. *See id*. (Schedule J).

24. Accordingly, the Debtors' total monthly net income is $122.00. *See id*.

   ## *2.      The Debtors' Plan.*

25. The proposed duration of the Plan is 37 months.  See D.E. No. 20.

---

[3]      The secured amount of RREF's claim accounts for prior liens as listed in the Debtors' Schedules.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

26.     The Plan fails to list RREF as a secured creditor or provide treatment for RREF's secured claim. *See id.*, at 3.

27.     The Plan proposes total plan payments of $20,700.00, in the amount of $575.00 each month for months 2 through 37. *See id.*

28.     Under the Plan, only $740.00 of the total plan payment amount will be distributed *pro rata* to unsecured, nonpriority creditors. *See id.*

## III.     ARGUMENT

Section 1307(c) provides that the bankruptcy court may either dismiss or convert a Chapter 13 case to Chapter 7 for cause, "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1307(c). This provision first requires the bankruptcy court to consider "cause" based on a list of nonexclusive items designated in 11 U.S.C. § 1307(c)(1)-(11). *See Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 674–75 (9th Cir. BAP 2006). If "cause" exists, the bankruptcy court then decides whether conversion or dismissal will best serve the interests of creditors and the estate. *See id.*; *In re de la Salle v. U .S. Bank, N.A. (In re de la Salle)*, 461 B.R. 593, 605 (9th Cir. BAP 2011).

Here, as discussed more fully below, cause under 11 U.S.C. § 1307(c) exists because the Debtors: (1) fail to meet the eligibility requirements for Chapter 13 relief; (2) filed this Bankruptcy Case in bad faith; and (3) have not proposed and, more importantly, cannot propose a confirmable plan under 11 U.S.C. § 1325. There is simply no reason for this Bankruptcy Case to continue, and conversion to Chapter 7 is in the best interest of the creditors and the Debtors' estate. Accordingly, the Court should convert this Bankruptcy Case to a proceeding under Chapter 7.

### A.     The Debtors cannot to propose a plan that meets the requirements of 11 U.S.C. § 1325.

The failure to propose a confirmable Chapter 13 plan constitutes sufficient "cause" for conversion under 11 U.S.C. § 1307(c). *See e.g, In re Gilbert*, 535 B.R. 317, 326 (Bankr. C.D.Cal. 2015) (finding cause under 11 U.S.C. 1307(c) where plan was infeasible on its face as it proposed to make $5,259.45 monthly plan payments, yet debtor only had

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

$200 in disposable income and provided no evidence substantiating his ability to generate sufficient future income); *see also In re Merh*i, 518 B.R. 705 (Bankr. E.D.N.Y. 2014) (inability to propose a confirmable debt adjustment plan constituted cause under 11 U.S.C. § 1307(c) where debtor had only $9,098.33 in net monthly income available to fund proposed plan and short-term mortgage debt would have required monthly payments of at least $17,088.88 for 60 months). To be confirmable, the Debtors' Plan, and any future amendments or plans proposed in this Bankruptcy Case, must satisfy the requirements of 11 U.S.C. § 1325.

The Debtors' current Plan does not present a serious effort at reorganization and is infeasible on its face. As argued by RREF in its Objection,[4] the Debtors' Plan fails to meet the requirements of 11 U.S.C. § 1325 because, among other things: (A) the Debtors failed to propose the Plan and file the Bankruptcy Case, in good faith; (B) the Plan fails to provide treatment for RREF's secured claim; (C) the Plan pays unsecured creditors less than they would receive under Chapter 7; and (D) the Debtors are ineligible for Chapter 13 relief under 11 U.S.C. § 109(e). Furthermore, despite only scheduling monthly net income in the amount of $122.00, the Debtors propose to make monthly plan payments to the Trustee in the amount of $575.00 under the current Plan. Based upon the Debtors' scheduled net monthly income of $122.00, the plan is infeasible on its face as the Debtors do not have the financial capability to make the plan payments as required under 11 U.S.C § 1325(a)(6).

Furthermore, any future plans or amendments proposed by the Debtors in this Bankruptcy Case would be fruitless as the Debtors' schedules reveal that they are financially incapable of proposing a confirmable plan. Pursuant to 11 U.S.C. § 1325(a)(5)(B), any plan proposed by the Debtors must provide secured creditors with the full value of the allowed amount of their claim and, if payments are proposed, those payments must be in equal monthly amounts. As explained above, RREF has a secured

---

[4]    RREF incorporates by reference the entirety of the arguments set forth in its Objection. *See* D.E. No. 27.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

claim in the amount of approximately $395,000.00. The Debtors' plan must provide treatment for RREF's secured claim and the proposed duration of the Debtors' Plan is 37 months. Thus, pursuant to 11 U.S.C § 1325(a)(5)(B), any future plan proposed by the Debtors must include monthly payments to RREF in the amount of $10,675.67. *See Barnes v. Barnes (In re Barnes)*, 32 F.3d 405 (9th Cir. 1994) (requirement of plan furnishing creditor with present value of its secured claim was mandatory and precluded confirmation of Chapter 13 plan). Alternatively, assuming for purposes of argument only that the Debtors' $525,000.00 valuation of the N. Via De Suenos Property is correct, approximately $225,000.00 of RREF's claim is secured and the Debtors' plan must propose monthly payments to RREF in the amount of approximately $6,081.00. Under either of these valuations, the Debtors' schedules indicate that they do not have sufficient income to make the required payments to RREF. Indeed, the Debtors scheduled only $4,412.00 in total monthly income.

Accordingly, the Debtors have not proposed, and cannot propose, a plan that is capable of meeting the requirements for confirmation under 11 U.S.C. § 1325. This reason alone is sufficient cause for conversion to Chapter 7 proceeding under 11 U.S.C. § 1307(c). *See In re Gilbert*, 535 B.R. at 326; *In re Merh*i, 518 B.R. 705.

### B. The Debtors filed this Bankruptcy Case in bad faith.

A lack of good faith constitutes cause to dismiss a chapter 13 case. *In re Leavitt*, 171 F.3d 1219 (9th Cir. 1999) (affirming chapter 13 dismissal based upon bad faith where the debtor: failed to fully disclose assets, omitted some assets on his schedules and undervalued others, offered nothing to the largest unsecured creditor in proposed plans, had a history of filing Chapter 13 petitions, and timing of filings demonstrated that the debtor's motive was to use the Bankruptcy system to avoid payment of a judgment); *In re de la Salle*, 461 B.R. at 605 (citing *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994) (per curiam)). "To determine bad faith a bankruptcy judge must review the totality of the circumstances. A judge should ask whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter

13 petition or plan in an inequitable manner." *In re de la Salle,* 461 B.R. at 605-06 (internal quotations omitted); *see also In re Leavitt*, 171 F.3d at 1224 (discussing factors to be considered). "A finding of bad faith does not require fraudulent intent by the debtor." *Id*. at 1225.

Here, the totality of the circumstances suggests that the Debtors filed this Bankruptcy Case in bad faith. As explained above, and more fully in RREF's Objection, the Debtors' schedules and Plan contain misrepresentations and inaccuracies that are likely an attempt to mislead the Court and artificially deflate the Debtors' equity in non-exempt property. Since the time of filing its Objection, RREF has acquired more information that appears to invalidate the Debtors' alleged second mortgage on the N. Via De Suenos Property. Although the Debtors did have two Home Equity Lines of Credit with BBVA Compass Bank that were secured by respective deeds of trust on the N. Via De Suenos Property, the Debtors were released from both deeds of trust by October 17, 2005. And, while the Debtors did have a mortgage with BBVA Compass Bank on the N. Via De Suenos Property, this mortgage was assigned to Wells Fargo in September 16, 2011. Based upon the currently available information, RREF believes that the inaccurate BBVA Compass Bank mortgage is a deliberate attempt by the Debtors to devalue their equity in the N. Via De Suenos Property.

As further evidence of a lack of good faith, the Debtors' motivation for seeking Chapter 13 relief is not sincere, as evidenced by the timing of the Debtors' petition and the nominal amount of the proposed payments to unsecured creditors under the Plan. Despite scheduling several unsecured claims, the Debtors' Plan proposed to pay, effectively, one claim. *See In re Warner*, 115 B.R. 233, 238 (Bankr. C.D. Cal. 1989) (denying confirmation and dismissing petition because chapter 13 plan proposed to pay only a single creditor and no unsecured creditors, even though the debtor had the ability to make *some* payments to other unsecured creditors). Additionally, the timing of the Debtors' bankruptcy petition suggests that the Debtors sought relief under Chapter 13 solely to thwart RREF's legitimate collection efforts. *See In re Leavitt*, 171 F.3d 1219

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1  finding evidence of bad faith where debtor's motive was to use the Bankruptcy system to

2  avoid payment of a judgment). *See also In re Chinichian*, 784 F.2d 1440, 1445 (9th Cir.

3  1986) (finding purpose of debtor's plan was to defeat state court litigation and such

4  purpose violated the spirit of Chapter 13).

5      Furthermore, as explained above, the Debtors have no real prospects for

6  reorganization under Chapter 13 as they are financially incapable of proposing payments

7  that provide RREF with the value of its secured claim.  In sum, the totality of the

8  circumstances suggests that the Debtors filed this Bankruptcy Case in bad faith, and this

9  alone is sufficient cause for conversion to a Chapter 7 proceeding under 11 U.S.C.

10  §1307(c).  See *In re Leavitt*, 171 F.3d 1219.

11          **C.     In the alternative, the Debtors are not eligible for Chapter 13 relief.**

12      If the Court finds that the alleged BBVA Compass Bank mortgage exists and that

13  Debtors' valuation of the N. Via De Suenos property is correct, than the Debtors are not

14  eligible for Chapter 13 relief because their unsecured debts exceed the statutory limit.

15  Section 109(e) sets forth the eligibility requirements for all Chapter 13 debtors, stating:

16          Only an individual with regular income that owes, on the
        date of the filing of the petition, noncontingent,
17          liquidated, ***unsecured debts of less than $383,175*** and
        noncontingent, liquidated, secured debts of less than
18          $1,149,525 . . .

19  11 U.S.C. § 109(e) (emphasis added).

20      The Debtors' scheduled a total of $350,362.00 in unsecured debt, with several

21  additional unsecured claims of unknown value.  In calculating this total, the Debtors failed

22  to account for the Judgment's accrued interest and underestimated the value of RREF's

23  claim by $110,029.94 ($410,029.94 – $300,000.00).  At $410,029.94, RREF's claim alone

24  exceeds the unsecured debt limit under 11 U.S.C. § 109(e).  If RREF's claim is wholly

25  unsecured, as the Debtors contend, then the Debtors are not eligible for Chapter 13 relief.

26      Consequently, if the BBVA Compass Bank Mortgage is valid and the Debtors'

27  valuation of the N. Via De Suenos Property is correct, the Court should convert the case to

28  a proceeding under Chapter 7 pursuant to 11 U.S.C. § 1307(c).  *See In re Tatsis*, 72 B.R.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

908 (Bankr. W.D.N.C. 1987) (converting Chapter 13 case to a Chapter 7 case because debtors' debts exceeded the debt limit under 11 U.S.C. § 1093(e)).

**D.** **Converting this Bankruptcy Case to a Chapter 7 proceeding is in the best interests of the creditors and the estate.**

Conversion is in the best interest of the Debtors' creditors and estate. The Debtors are unable to file a confirmable plan under Chapter 13, and the Debtors' schedules and statements show that they hold non-exempt property that could be used to pay off some, or all, unsecured creditors. Additionally, the Debtors have not been truthful in their filings, and the mismanagement of the Debtors' bankruptcy estate warrants the involvement of a Chapter 7 trustee who will examine the Debtors' assets, recover any fraudulently transferred or concealed assets, dispose of assets in an appropriate and expeditious manner, and distribute the proceeds to creditors. 11 U.S.C. § 704(a).

The Debtors' schedules show that they do not have sufficient monthly income to fund the payments required for a confirmable Chapter 13 plan under 11 U.S.C. § 1325(a)(5)(B). Conversion of a case to a Chapter 7 and the appointment of a Chapter 7 trustee will mitigate these problems and be in the best interests of the creditors. *See In re Lindsey*, 183 B.R. 624, 628 (Bankr. D.Idaho 1995) (conversion of chapter 13 debtor's case to Chapter 7, rather than dismissal, was appropriate where substantial property existed in estate, which if liquidated by Chapter 7 trustee, could yield proceeds for distribution to secured and unsecured creditors).

**IV. CONCLUSION**

For all of the foregoing reasons, RREF respectfully requests that the Court convert the Debtor's Bankruptcy to a proceeding under Chapter 7 pursuant to 11 U.S.C. 1307(c). Alternatively, and only in the event that conversion is not ordered, RREF requests that this Court dismiss this case.

25318861

DATED this 22nd day of December, 2016.

SNELL & WILMER L.L.P.


By: /s/ Rebekah L.W. Elliott
Steven D. Jerome
Rebekah L.W. Elliott
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for RREF CB SBL II-AZ
RCG, LLC

Copy of the foregoing served by
First Class U.S. Mail or electronic
notification this 22nd day of December, 2016, to:

Eric Ollason
182 N Court Ave.
Tucson, AZ 85701
eollason@182court.com
Attorney for Debtor

Dianne C. Kerns
7320 N. La Cholla #154 PMB 413
Tucson, AZ 85741-2305
Chapter 13 Trustee

Lakshmi Jagannath
McCarthy & Holthus, LLP
8502 E. Via De Ventura, #200
Scottsdale, AZ 85258
bknotice@mccarthyholthus.com
Attorneys for Wells Fargo Bank, N.A.

Kristin E Mcdonald
McCarthy & Holthus, LLP
8502 E. Via de Ventura, Suite 200
Scottsdale, AZ 85258
kmcdonald@mccarthyholthus.com
Attorneys for JPMC Specialty Mortgage
LLC f/k/a WM Specialty Mortgage LLC


/s/ Janice L. Rogalla

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

25318861

# EXHIBIT 1

F. ANN RODRIGUEZ, RECORDER
RECORDED BY: PSG
DEPUTY RECORDER
9394         RO2D

TFNTI
COMPASS BANK
P O BOX 10566
BIRMINGHAM AL  35296



DOCKET:        11780
PAGE:          3135
NO. OF PAGES:     8
SEQUENCE:    20020740852
             04/17/2002
DOTRFS       17:30

MAIL

AMOUNT PAID   $   16.00

After Recordation Return to:
    COMPASS BANK
    P. O. Box 10566
    Birmingham, AL 35296

    *2100162 PF*

# HOME EQUITY LINE DEED OF TRUST
## ASSIGNMENT OF RENTS AND FIXTURE FILING

| BORROWER |
|---|
| ROBERT C GUTIERREZ |
| ROSE MARIE GUTIERREZ |
| |
| ADDRESS |
| 2240 N VIA DE SUENOS |
| TUCSON, AZ  85745 |
| TELEPHONE NO.          IDENTIFICATION NO. |

| GRANTOR/TRUSTOR |
|---|
| ROBERT C GUTIERREZ, AND SPOUSE |
| ROSE MARIE GUTIERREZ |
| |
| ADDRESS |
| 2240 N VIA DE SUENOS |
| TUCSON, AZ  85745 |
| TELEPHONE NO.          IDENTIFICATION NO. |

TRUSTEE: COMPASS BANK
         P. O. Box 3018, Tucson, Arizona 85702

In consideration of the loan or other credit accommodation hereinafter specified and any future advances or future Obligations, as defined herein, which may hereafter be advanced or incurred and the trust hereinafter mentioned and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby irrevocably bargains, sells, transfers, grants, conveys and assigns to Trustee, his successors and assigns, in trust, for ____ Compass Bank , 2850 E. Camelback Road #140, Phoenix, AZ 85016

_____ ("Lender"), the beneficiary under this Deed of Trust, with power of sale and right of entry and possession all of Grantor's present and future estate, right, title and interest in and to the real property described in Schedule A which is attached to this Deed of Trust and incorporated herein by this reference, together with all present and future improvements and fixtures; all tangible personal property including, without limitation, all machinery, equipment, building materials, and goods of every nature (excluding household goods) now or hereafter located on or used in connection with the real property, whether or not affixed to the land; all privileges, hereditaments, and appurtenances; all leases, licenses and other agreements; all rents, issues and profits; all water, well, ditch, reservoir and mineral rights and stocks pertaining to the real property (cumulatively "Property"); to have and to hold the Property and the rights hereby granted for the use and benefit of Trustee, his successors and assigns, until payment in full of all Obligations secured hereby.

| INTEREST RATE | PRINCIPAL AMOUNT/ CREDIT LIMIT | FUNDING/ AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| VARIABLE | $100,000.00 | 04/11/02 | 11/15/37 | | 56562100119806 |
| | | | | | |
| | | | | | |

Moreover, in further consideration, Grantor does, for Grantor and Grantor's heirs, representatives, successors, and assigns, hereby expressly warrant, covenant, and agree with Lender and Trustee and their successors and assigns as follows:

1. **OBLIGATIONS.** This Deed of Trust shall secure the payment and performance of all present and future indebtedness, liabilities, obligations and covenants of Borrower or Grantor (cumulatively "Obligations") to Lender pursuant to:

    (a) this Deed of Trust and the following promissory notes and other agreements;

    (b) all other present or future written agreements with Lender which refer specifically to this Deed of Trust (**whether executed for the same or different purposes than the foregoing**) ;

    (c) any guaranty of obligations of other parties given to Lender now or hereafter executed which refers to this Deed of Trust;

LPAZ516  © John H. Harland Co. (10/24/00) (800) 947-3769

(d) future advances, whether obligatory or optional, to the same extent as if made contemporaneously with the execution of this Deed of Trust, made or extended to or on behalf of Grantor or Borrower. Grantor agrees that if one of the Obligations is a line of credit, the lien of this Deed of Trust shall continue until payment in full of all debt due under the line notwithstanding the fact that from time to time (but before termination of the line) no balance may be outstanding. At no time shall the lien of this Deed of Trust, not including amounts advanced to protect the security of this Deed of Trust, exceed $100,000.00 _____ ; and

(e) all amendments, extensions, renewals, modifications, replacements or substitutions to any of the foregoing.

As used in this Paragraph 1, the terms Grantor and Borrower shall include and also mean any Grantor or Borrower if more than one.

## 2. REPRESENTATIONS, WARRANTIES AND COVENANTS. Grantor represents, warrants and covenants to Lender that:

(a) Grantor has fee simple marketable title to the Property and shall maintain the Property free of all liens, security interests, encumbrances and claims except for this Deed of Trust and those described in Schedule B which is attached to this Deed of Trust and incorporated herein by reference, which Grantor agrees to pay and perform in a timely manner;

(b) Grantor is in compliance in all respects with all applicable federal, state and local laws and regulations, including, without limitation, those relating to "Hazardous Materials," as defined herein, and other environmental matters (the "Environmental Laws"), and neither the federal government nor the state where the Property is located nor any other governmental or quasi governmental entity has filed a lien on the Property, nor are there any governmental, judicial or administrative actions with respect to environmental matters pending, or to the best of the Grantor's knowledge, threatened, which involve the Property. Neither Grantor nor, to the best of Grantor's knowledge, any other party has used, generated, released, discharged, stored, or disposed of any Hazardous Materials as defined herein, in connection with the Property or transported any Hazardous Materials to or from the Property. Grantor shall not commit or permit such actions to be taken in the future. The term "Hazardous Materials" shall mean any substance, material, or waste which is or becomes regulated by any governmental authority including, but not limited to: (i) petroleum; (ii) friable or nonfriable asbestos; (iii) polychlorinated biphenyls; (iv) those substances, materials or wastes designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act or listed pursuant to Section 307 of the Clean Water Act or any amendments or replacements to these statutes; (v) those substances, materials or wastes defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act or any amendments or replacements to that statute; and (vi) those substances, materials or wastes defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, or any amendments or replacements to that statute or any other similar state or federal statute, rule, regulation or ordinance now or hereafter in effect. Grantor shall not lease or permit the sublease of the Property to a tenant or subtenant whose operations may result in contamination of the Property with Hazardous Materials or toxic substances;

(c) All applicable laws and regulations including, without limitation, the Americans with Disabilities Act, 42 U.S.C. 12101 et seq. (and all regulations promulgated thereunder) and all zoning and building laws and regulations relating to the Property by virtue of any federal, state or municipal authority with jurisdiction over the Property, presently are and shall be observed and complied with in all material respects, and all rights, licenses, permits, and certificates of occupancy (including but not limited to zoning variances, special exceptions for nonconforming uses, and final inspection approvals), whether temporary or permanent, which are material to the use and occupancy of the Property, presently are and shall be obtained, preserved and, where necessary, renewed;

(d) Grantor has the right and is duly authorized to execute and perform its Obligations under this Deed of Trust and these actions do not and shall not conflict with the provisions of any statute, regulation, ordinance, rule of law, contract or other agreement which may be binding on Grantor at any time;

(e) No action or proceeding is or shall be pending or threatened which might materially affect the Property; and

(f) Grantor has not violated and shall not violate any statute, regulation, ordinance, rule of law, contract or other agreement which might materially affect the Property (including, but not limited to, those governing Hazardous Materials) or Lender's rights or interest in the Property pursuant to this Deed of Trust.

## 3. PRIOR DEEDS OF TRUST. Grantor represents and warrants that there are no prior deeds of trust affecting any part of the Property except as set forth on Schedule B attached to this Deed of Trust which Grantor agrees to pay and perform in a timely manner. If there are any prior deeds of trust then Grantor agrees to pay all amounts owed, and perform all obligations required, under such deeds of trust and the indebtedness secured thereby.

## 4. TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN GRANTORS OR BORROWERS. In the event of a sale, conveyance, lease, contract for deed or transfer to any person of all or any part of the real property described in Schedule A, or any interest therein, or of all or any beneficial interest in Borrower or Grantor (if Borrower or Grantor is not a natural person or persons but is a corporation, limited liability company, partnership, trust, or other legal entity), Lender may, at its option, declare the outstanding principal balance of the Obligations plus accrued interest thereon immediately due and payable. At Lender's request, Grantor or Borrower, as the case may be, shall furnish a complete statement setting forth all of its stockholders, members or partners, as appropriate, and the extent of their respective ownership interests.

## 5. ASSIGNMENT OF RENTS. In consideration of the Obligations which are secured by this Deed of Trust, Grantor absolutely assigns to Lender all Grantor's estate, right, title, interest claim and demand now owned or hereafter acquired in all existing and future leases of the Property (including extensions, renewals and subleases), all agreements for use and occupancy of the Property (all such leases and agreements whether written or oral, are hereafter referred to as the "Leases"), and all guaranties of lessees' performance under the Leases, together with the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues, profits and other income of any nature now or hereafter due (including any income of any nature coming due during any redemption period) under the Leases or, from or arising out of the Property, including minimum rents, additional rents, percentage rents, parking or common area maintenance contributions, tax and insurance contributions, deficiency rents, liquidated damages following default in any Lease, all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Property, all proceeds payable as a result of a lessee's exercise of an option to purchase the Property, all proceeds derived from the termination or rejection of any Lease in a bankruptcy or other insolvency proceeding, and all proceeds from any rights and claims of any kind which Grantor may have against any lessee under the Leases or any occupants of the Property (all of the above are hereafter collectively referred to as the "Rents"). This assignment is subject to the right, power and authority given to the Lender to collect and apply the Rents. This assignment is recorded in accordance with applicable state law; the lien created by this assignment is intended to be specific, perfected, and choate upon the recording of this Deed of Trust, all as provided by applicable state law as amended from time to time. As long as there is no default under the Obligations or this Deed of Trust, Lender grants Grantor a revocable license to collect all Rents from the Leases when due and to use such proceeds in Grantor's business operations. However, Lender may at any time require Grantor to deposit all Rents into an account maintained by Grantor or Lender at Lender's institution. Upon default in the payment of, or in the performance of, any of the Obligations, Lender may at its option take possession of the Property and have, hold, manage, lease and operate the Property on terms and for a period of time that Lender deems proper. Lender may proceed to collect and receive all Rents, from the Property, and Lender shall have full power to periodically make alterations, renovations, repairs or replacements to the Property as Lender may deem proper. Lender may apply all Rents in Lender's sole discretion, to payment of the Obligation or to the payment of the cost of such alterations, renovations, repairs and replacements and any expenses

LPAZ516B ® John H. Harland Co. (10/24/02) (800) 937-3799

incident to taking and retaining possession of the Property and the management and operation of the Property. Lender may keep the Property properly insured and may discharge any taxes, charges, claims, assessments and other liens which may accrue. The expense and cost of these actions may be paid from the Rents received, and any unpaid amounts shall be added to the principal of the Obligations. These amounts, together with other costs, shall become part of the Obligations secured by this Deed of Trust.

**6. LEASES AND OTHER AGREEMENTS.** Grantor shall not take or fail to take any action which may cause or permit the termination or the withholding of any payment in connection with any Lease pertaining to the Property. In addition, Grantor, without Lender's prior written consent, shall not: (a) collect any monies payable under any Lease more than one month in advance; (b) modify any Lease; (c) assign or allow a lien, security interest or other encumbrance to be placed upon Grantor's rights, title and interest in and to any Lease or the amounts payable thereunder; or (d) terminate or cancel any Lease except for the nonpayment of any sum or other material breach by the other party thereto. If Grantor receives at any time any written communication asserting a default by Grantor under a Lease or purporting to terminate or cancel any Lease, Grantor shall promptly forward a copy of such communication (and any subsequent communications relating thereto) to Lender. All such Leases and the amounts due to Grantor thereunder are hereby assigned to Lender as additional security for the Obligations.

**7. COLLECTION OF INDEBTEDNESS FROM THIRD PARTY.** Lender shall be entitled to notify or require Grantor to notify any third party (including, but not limited to, lessees, licensees, governmental authorities and insurance companies) to pay Lender any indebtedness or obligation owing to Grantor with respect to the Property (cumulatively "Indebtedness") whether or not a default exists under this Deed of Trust. Grantor shall diligently collect the Indebtedness owing to Grantor from these third parties until the giving of such notification. In the event that Grantor possesses or receives possession of any instruments or other remittances with respect to the Indebtedness following the giving of such notification or if the instruments or other remittances constitute the prepayment of any Indebtedness or the payment of any insurance or condemnation proceeds, Grantor shall hold such instruments and other remittances in trust for Lender apart from its other property, endorse the instruments and other remittances to Lender, and immediately provide Lender with possession of the instruments and other remittances. Lender shall be entitled, but not required, to collect (by legal proceedings or otherwise), extend the time for payment, compromise, exchange or release any obligor or collateral, or otherwise settle any of the Indebtedness whether or not an Event of Default exists under this Deed of Trust. Lender shall not be liable to Grantor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom. Notwithstanding the foregoing, nothing herein shall cause Lender to be deemed a mortgagee-in-possession

**8. USE AND MAINTENANCE OF PROPERTY.** Grantor shall take all actions and make any repairs needed to maintain the Property in good condition. Grantor shall not commit or permit any waste to be committed with respect to the Property. Grantor shall use the Property solely in compliance with applicable law and insurance policies. Grantor shall not make any alterations, additions or improvements to the Property without Lender's prior written consent. Without limiting the foregoing, all alterations, additions and improvements made to the Property shall be subject to the beneficial interest belonging to Lender, shall not be removed without Lender's prior written consent, and shall be made at Grantor's sole expense.

**9. LOSS OR DAMAGE.** Grantor shall bear the entire risk of any loss, theft, destruction or damage (cumulatively "Loss or Damage") to the Property or any portion thereof from any cause whatsoever. In the event of any Loss or Damage, Grantor shall, at the option of Lender, repair the affected Property to its previous condition or pay or cause to be paid to Lender the decrease in the fair market value of the affected Property.

**10. INSURANCE.** The Property will be kept insured for its full insurable value (replacement cost) against all hazards including loss or damage caused by flood, earthquake, tornado and fire, theft or other casualty to the extent required by Lender. Grantor may obtain insurance on the Property from such companies as are acceptable to Lender in its sole discretion. The insurance policies shall require the insurance company to provide Lender with at least **30** days' written notice before such policies are altered or cancelled in any manner. The insurance policies shall name Lender as a loss payee and provide that no act or omission of Grantor or any other person shall affect the right of Lender to be paid the insurance proceeds pertaining to the loss or damage of the Property. In the event Grantor fails to acquire or maintain insurance, Lender (after providing notice as may be required by law) may in its discretion procure appropriate insurance coverage upon the Property and the insurance cost shall be an advance payable and bearing interest as described in Paragraph 21 and secured hereby. Grantor shall furnish Lender with evidence of insurance indicating the required coverage. Lender may act as attorney-in-fact for Grantor in making and settling claims under insurance policies, cancelling any policy or endorsing Grantor's name on any draft or negotiable instrument drawn by any insurer. All such insurance policies shall be immediately assigned, pledged, and delivered to Lender as further security for the Obligations. In the event of loss, Grantor shall immediately give Lender written notice and Lender is authorized to make proof of loss. Each insurance company is directed to make payments directly to Lender instead of to Lender and Grantor. Lender shall have the right, at its sole option, to apply such monies toward the Obligations or toward the cost of rebuilding and restoring the Property. Any amounts may at Lender's option be applied in the inverse order of the due dates thereof.

**11. ZONING AND PRIVATE COVENANTS.** Grantor shall not initiate or consent to any change in the zoning provisions or private covenants affecting the use of the Property without Lender's prior written consent. If Grantor's use of the Property is or becomes a nonconforming use under any zoning provision, Grantor shall not cause or permit such use to be discontinued or abandoned without the prior written consent of Lender. Grantor will immediately provide Lender with written notice of any proposed changes to the zoning provisions or private covenants affecting the Property.

**12. CONDEMNATION.** Grantor shall immediately provide Lender with written notice of any actual or threatened condemnation or eminent domain proceeding pertaining to the Property. All monies payable to Grantor from such condemnation or taking are hereby assigned to Lender and shall be applied first to the payment of Lender's attorneys' fees, legal expenses and other costs (including appraisal fees) in connection with the condemnation or eminent domain proceedings and then, at the option of Lender, to the payment of the Obligations or the restoration or repair of the Property.

**13. LENDER'S RIGHT TO COMMENCE OR DEFEND LEGAL ACTIONS.** Grantor shall immediately provide Lender with written notice of any actual or threatened action, suit, or other proceeding affecting the Property. Grantor hereby appoints Lender as its attorney-in-fact to commence, intervene in, and defend such actions, suits, or other legal proceedings and to compromise or settle any claim or controversy pertaining thereto. Lender shall not be liable to Grantor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom: Nothing contained herein will prevent Lender from taking the actions described in this paragraph in its own

**14. INDEMNIFICATION.** Lender shall not assume or be responsible for the performance of any of Grantor's obligations with respect to the Property under any circumstances. Grantor shall immediately provide Lender with written notice of and indemnify and hold Lender and its shareholders, directors, officers, employees and agents harmless from all claims, damages, liabilities (including attorneys' fees and legal expenses), causes of action, actions, suits and other legal proceedings (cumulatively "Claims") pertaining to the Property (including, but not limited to, those involving Hazardous Materials). Grantor, upon the request of Lender, shall hire legal counsel, acceptable to Lender, to defend Lender from such Claims, and pay the attorneys' fees, legal expenses and other costs incurred in connection therewith. In the alternative, Lender shall be entitled to employ its own legal counsel to defend such Claims at Grantor's cost. Grantor's obligation to indemnify Lender under this paragraph shall survive the termination, release or foreclosure of this Deed of Trust.

**15. TAXES AND ASSESSMENTS..** Grantor shall pay all taxes and assessments relating to the Property when due and immediately provide Lender evidence of payment of same. Upon the request of Lender, Grantor shall deposit with Lender each month one-twelfth (1/12) of the estimated annual insurance premium, taxes and assessments pertaining to the Property. So long as there is no default, these amounts shall be applied to the payment of taxes, assessments and insurance as required on the Property. In the event of default, Lender shall have the right, at its sole option, to apply the funds so held to pay any taxes or against the Obligations. Any funds applied may, at Lender's option, be applied in reverse order of the due date thereof.

**16. INSPECTION OF PROPERTY, BOOKS, RECORDS AND REPORTS.** Grantor shall allow Lender or its agents to examine and inspect the Property and examine, inspect and make copies of Grantor's books and records pertaining to the Property from time to time. Grantor shall provide any assistance required by Lender for these purposes. – All of the signatures and information contained in Grantor's books and records shall be genuine, true, accurate and complete in all respects. Grantor shall note the existence of Lender's beneficial interest in its books and records pertaining to the Property. Additionally, Grantor shall report, in a form satisfactory to Lender, such information as Lender may request regarding Grantor's financial condition or the Property. The information shall be for such periods, shall reflect Grantor's records at such time, and shall be rendered with such frequency as Lender may designate. All information furnished by Grantor to Lender shall be true, accurate and complete in all respects, and signed by Grantor if Lender requests.

**17. ESTOPPEL CERTIFICATES.** Within ten (10) days after any request by Lender, Grantor shall deliver to Lender, or any intended transferee of Lender's rights with respect to the Obligations, a signed and acknowledged statement specifying (a) the outstanding balance on the Obligations; and (b) whether Grantor possesses any claims, defenses, defenses, set-offs or counterclaims with respect to the Obligations and, if so, the nature of such claims, defenses, set-offs or counterclaims. Grantor will be conclusively bound by any representation that Lender may make to the intended transferee with respect to these matters in the event that Grantor fails to provide the requested statement in a timely manner.

**18. EVENTS OF DEFAULT.** An Event of Default shall occur under this Deed of Trust and the Trustee's power shall become operative in the event that Grantor, Borrower or any guarantor of any Obligation:

(a) commits fraud or makes a material misrepresentation at any time in connection with the Obligations or this Deed of Trust;

(b) fails to meet the repayment terms of the Obligations for any outstanding balance; or

(c) by any action or inaction, adversely affects the Property, or any right of Lender in such Property, including, but not limited to, transfer of title to or sale of the Property without the permission of Lender, failure to maintain required insurance or to pay taxes on the Property, allowing the filing of a lien senior to that held by Lender, death of the sole Borrower obligated under the Obligations, allowing the taking of the Property through eminent domain, or allowing the Property to be foreclosed by a lienholder other than Lender. In addition, an Event of Default shall occur if, as a result of any of the following, the property, or any right of the Lender in the Property, is adversely affected: the Borrower, Grantor or any guarantor of any Obligation commits waste or otherwise destructively uses or fails to maintain the Property, uses the property in an illegal manner which may subject the Property to seizure, or moves from the Property; a judgment is filed against the Borrower, Grantor or any guarantor of any Obligation; or one of two Borrowers obligated under the Obligations dies.

**19. RIGHTS OF LENDER ON EVENT OF DEFAULT.** Upon the occurrence of an Event of Default under this Deed of Trust, Lender shall be entitled to exercise one or more of the following remedies without notice or demand (except as required by law):

(a) to declare the Obligations immediately due and payable in full, such acceleration shall be automatic and immediate if the Event of Default is a filing under the Bankruptcy Code;

(b) to collect the outstanding Obligations with or without resorting to judicial process;

(c) to require Grantor to deliver and make available to Lender any personal property or Chattels constituting the Property at a place reasonably convenient to Grantor and Lender;

(d) to enter upon and take possession of the Property without applying for or obtaining the appointment of a receiver and, at Lender's option, to appoint a receiver without bond, without first bringing suit on the Obligations and without otherwise meeting any statutory conditions regarding receivers, it being intended that Lender shall have this contractual right to appoint a receiver;

(e) to employ a managing agent of the Property and let the same, either in Trustee's own name, in the name of Lender or in the name of Grantor, and receive the rents, incomes, issues and profits of the Property and apply the same, after payment of all necessary charges and expenses, on account of the Obligations;

(f) to pay any sums in any form or manner deemed expedient by Lender to protect the security of this Deed of Trust or to cure any default other than payment of interest or principal on the Obligations;

(g) to foreclose this Deed of Trust judicially or nonjudicially;

(h) to set-off Grantor's Obligations against any amounts owed Grantor by Lender including, but not limited to, monies, instruments, and deposit accounts maintained with Lender or any currently existing or future affiliate of Lender; and

(i) to exercise all other rights available to Lender under any other written agreement or applicable law.

Lender's rights are cumulative and may be exercised together, separately, and in any order. In the event that Lender institutes an action seeking the recovery of any of the Property by way of a prejudgment remedy in an action against Grantor, Grantor waives the posting of any bond which might otherwise be required. Lender or Lender's designee may purchase the Property at any sale. In the event Lender purchases the Property at the Trustee's sale, to the extent Lender's bid price exceeds the Obligations, Lender shall pay Trustee cash equal to such excess. The Property or any part thereof may be sold in one parcel, or in such parcels, manner or order as Lender in its sole discretion may elect, and one or more exercises of the power herein granted shall not extinguish or exhaust the power unless the entire Property is sold or the Obligations are paid in full.

**20. SECURITY INTEREST UNDER THE UNIFORM COMMERCIAL CODE.** This Deed of Trust shall be considered a financing statement and a fixture filing pursuant to the provisions of the Uniform Commercial Code (as adopted in the state where the Property is located) covering fixtures chattels; and articles of personal property now owned or hereafter attached to or to be used in connection with the Property together with any and all replacements thereof and additions thereto (the "Chattels"), and Grantor hereby grants Lender a security interest in such Chattels. The debtor is the Grantor described above. The secured party is the Lender described above. Upon demand, Grantor shall make, execute and deliver such security agreements (as such term is defined in said Uniform Commercial Code) as Lender, at any time may deem necessary or proper or require to grant to Lender a perfected security interest in the Chattels; and upon Grantor's failure to do so, Lender is authorized to sign any such agreement as the agent of Grantor. Grantor hereby authorizes Lender to file financing statements (as such term is defined in said Uniform Commercial Code) with respect to the Chattels, at any time, without the signature of Grantor. Grantor will, however, at any time upon request of Lender, sign such financing statements. Grantor will pay all filing fees for the filing of such financing statements and for the refiling thereof at the times required, in the opinion of Lender, by said Uniform Commercial Code. If the lien of this Deed of Trust is subject to any security agreement covering the Chattels, then in the event of any default under this Deed of Trust, all the right, title and interest of Grantor in and to any and all of the Chattels is hereby assigned to Lender, together with the benefit of any deposits or payments now or hereafter made thereof by Grantor or the predecessors or successors in title of Grantor in the Property.

**21. · REIMBURSEMENT OF AMOUNTS EXPENDED BY LENDER.** Lender, at Lender's option, may expend funds (including attorneys' fees and legal expenses) to perform any act required to be taken by Grantor or to exercise any right or remedy of Lender under this Deed of Trust. Upon demand, Grantor shall immediately reimburse Lender for all such amounts expended by Lender together with interest thereon at the lower of the highest rate described in any Obligation or the highest rate allowed by law from the date of payment until the date of reimbursement. . These sums shall be included in the definition of Obligations herein and shall be secured by the beneficial interest granted herein. If the Obligations are paid after the beginning of publication of notice of sale, as herein provided, or in the event Lender shall, at its sole option, permit Grantor to pay any part of the Obligations after the beginning of publication of notice of sale, as herein provided, then, Grantor shall pay on demand all expenses incurred by the Trustee and Lender in connection with said publication, including reasonable attorneys' fees and this Deed of Trust shall be security for all such expenses and fees.

**22. APPLICATIONOF PAYMENTS.** Allpayments made by or on behalf of Grantor may be applied against the amounts paid by Lender (including attorneys' fees and legal expenses) in connection with the exercise of its rights or remedies described in this Deed of Trust and then to the payment of the remaining Obligations in whatever order Lender chooses.

**23. POWER OF ATTORNEY.** Grantor hereby appoints Lender as its attorney-in-fact to endorse Grantor's name on all instruments and other documents pertaining to the Obligations or indebtedness. In addition, Lender shall be entitled, but not required, to perform any action or execute any document required to be taken or executed by Grantor under this Deed of Trust. Lender's performance of such action or execution of such documents shall not relieve Grantor from any Obligation or cure any default under this Deed of Trust. The powers of attorney described in this Deed of Trust are coupled with an interest and are irrevocable.

**24. SUBROGATION OF LENDER.** Lender shall be subrogated to the rights of the holder of any previous lien, security interest or encumbrance discharged with funds advanced by Lender regardless of whether these liens, security interests or other encumbrances have been released of record.

**25. COLLECTIONCOSTS.** To the extent permitted by law, Grantor agrees to pay Lender's reasonable fees and costs, · including, but not limited to, fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants), whether or not such attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing any right or remedy under this Deed of Trust, whether or not suit is brought, including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, and for post-judgment collection actions.

**26. PARTIALRELEASE.** Lender may release its interest in a portion of the Property by executing and recording one or more partial releases without affecting its interest in the remaining portion of the Property. Nothing herein shall be deemed to obligate Lender to release any of its interest in the Property (except as required under paragraph 35), nor shall Lender be obligated to release any part of the Property if Grantor is in default under this Deed of Trust.

**27. MODIFICATIONAND WAIVER.** The modification or waiver of any of Grantor's Obligations or Lender's rights under this Deed of Trust must be contained in a writing signed by Lender. Lender may perform any of Borrower's or Grantor's Obligations, delay or fail to exercise any of its rights or accept payments from Grantor or anyone other than Grantor without causing a waiver of those Obligations or rights. A waiver on one occasion shall not constitute a waiver on any other occasion Grantor's Obligations under this Deed of Trust shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases any of the Obligations belonging to any Grantor, Borrower or third party or any of its rights against any Grantor, Borrower or third party or any of the Property. Lender's failure to insist upon strict performance of any of the Obligations shall not be deemed a waiver, and Lender shall have the right at any time thereafter to insist upon strict performance.

**28. SUBSTITUTE TRUSTEE.** In case of the death, inability, refusal to act or absence of the Trustee from the state where the Property is located or in case the holder of the Obligations shall desire for any reason to remove the Trustee or any substitute trustee as trustee hereunder and to appoint a new trustee in his place and stead, the holder of the Obligations is hereby granted full power to appoint in writing a substitute trustee for said Trustee, and the substitute trustee shall, when appointed, become successor to all rights of Trustee hereunder and the same shall become vested in him for the purposes and objects of this Deed of Trust with all the power, duties and obligations herein conferred on the Trustee.

**29. SUCCESSORS AND ASSIGNS.** This Deed of Trust shall be binding upon and inure to the benefit of Grantor and Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees and devisees.

**30. NOTICES.** Except as otherwise required by law, any notice or other communication to be provided under this Deed of Trust shall be in writing and sent to the parties at the addresses described in this Deed of Trust or such other address as the parties may designate in writing from time to time. Any such notice so given and sent by first class mail, postage prepaid, shall be deemed given the earlier of three (3) days after such notice is sent when received by the person to whom such notice is being given.

**31. SEVERABILITY.** Whenever possible, each provision of this Deed of Trust shall be interpreted so as to be effective and valid under applicable state law. If any provision of this Deed of Trust violates the law or is unenforceable, the rest of this Deed of Trust shall continue to be valid and enforceable.

**32. APPLICABLE LAW.** This Deed of Trust shall be governed by the laws of the state where the Property is located. Unless applicable law provides otherwise, Grantor consents to the jurisdiction and venue of any court selected by Lender, in its sole discretion, located in that state.

**33. NO THIRD-PARTYRIGHTS.** No person is or shall be a third-party beneficiary of any provision of this Deed of Trust. Allprovisions of this Deed of Trust in favor of Lender are intended solely for the benefit of Lender, and no third party shall be entitled to assume or expect that Lender willwaive or consent to the modification of any provision of this Deed of Trust, in Lender's sole discretion.

**34. PRESERVATION OF LIABILITYAND PRIORITY.** Without affecting the liability of Borrower, Grantor, or any guarantor of the Obligations, or any other person (except a person expressly released in writing) for the payment and performance of the Obligations, and without affecting the rights of Lender with respect to any Property not expressly released in writing, and without impairing in any way the priority of this Deed of Trust over the interest of any person acquired or first evidenced by recording subsequent to the recording of this Deed of Trust, Lender may, either before or after the maturity of the Obligations, and without notice or consent: release any person liable for payment or performance of all or any part of the Obligations; make any agreement altering the terms of payment or performance of all or any part of the Obligations; exercise or refrain from exercising or waive any right or remedy that Lender may have under this Deed of Trust; accept additional security of any kind for any of the Obligations; or release or otherwise deal with any real or personal property securing the Obligations. Any person acquiring or recording evidence of any interest of any nature in the Property shall be deemed, by acquiring such interest or recording any evidence thereof, to have consented to all or any such actions by Lender.

**35. DEFEASANCE.** Upon the payment and performance in full of all of the Obligations, Lender willexecute and deliver to Grantor those documents that may be required to release this Deed of Trust of record. Grantor shall be responsible to pay any costs of recordation.

**36. WAIVER OF HOMESTEAD.** Grantor hereby waives all homestead exemptions in the Property to which Grantor would otherwise be entitled under any applicable law.

**37. MISCELLANEOUS.** Grantor is the Trustor under this Deed of Trust. Grantor and Lender agree that time is of the essence. Grantor waives presentment, demand for payment, notice of dishonor and protest except as required by law. All references to Grantor in this Deed of Trust shall include all persons signing below. If there is more than one Grantor, their Obligations shall be joint and several. This Deed of Trust represents the complete integrated understanding between Grantor and Lender pertaining to the terms and conditions hereof.

**38. JURY TRIAL WAIVER. LENDER AND GRANTOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY CIVIL ACTION ARISING OUT OF, OR BASED UPON, THIS DEED OF TRUST.**

**39. ADDITIONAL TERMS:**

Grantor acknowledges that Grantor has read, understands, and agrees to the terms and conditions of this Deed of Trust, and acknowledges receipt of an exact copy of same.

Dated this ___11th___ day of ___April, 2002___ .

GRANTOR:  **ROBERT C GUTIERREZ**

_(signature)_
ROBERT C GUTIERREZ

GRANTOR:  **ROSE MARIE GUTIERREZ**

_(signature)_
ROSE MARIE GUTIERREZ

GRANTOR:

_____

GRANTOR:

_____

GRANTOR:

_____

GRANTOR:

_____

GRANTOR:

_____

GRANTOR:

_____

## Acknowledgments

STATE OF _Arizona_

COUNTY OF _Pima_

The foregoing instrument was acknowledged before me this _April 11, 2002_

by _Robert C. Gutierrez and Rose Marie Gutierrez_

_Notary Public_
Signature of person taking acknowledgment

_Notary Public_
Title or Rank

*[Notary seal: OFFICIAL SEAL / PAULETTE R. GRAY / NOTARY PUBLIC-ARIZONA / PIMA COUNTY / My Comm. Exp. July 7, 2005]*

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____

by _____

_____
Signature of person taking acknowledgment

_____
Title or Rank

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____

by _____

_____
Signature of person taking acknowledgment

_____
Title or Rank

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____

by _____

_____
Signature of person taking acknowledgment

_____
Title or Rank

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____

by _____

_____
Signature of person taking acknowledgment

_____
Title or Rank

| SCHEDULE A |
|---|

The following described real property located in the County of **PIMA**
State of **Arizona** :

LOT 59, OF VISTA DE LA SIERRA DE DIOS ACCORDING TO THE MAP RECORDED IN BOOK 32 OF MAPS, PAGE 21, RECORDS OF PIMA COUNTY, ARIZONA.

EXCEPT ALL COAL AND OTHER MINERALS AS RESERVED IN THE PATENT FROM THE UNITED STATES OF AMERICAN.

| SCHEDULE B |
|---|

1
1
7
8
0

3
1
4
2

THIS DOCUMENT WAS PREPARED BY:COMPASS BANK

E A S T S I D E

F. ANN RODRIGUEZ, RECORDER
RECORDED BY: YRN
          DEPUTY RECORDER
          5131      ES3
TLATI
COMPASS BANK
PO BOX 10566
BIRMINGHAM AL   35296



DOCKET:           11990
PAGE:              1236
NO. OF PAGES:         8
SEQUENCE:    20030330326
              02/19/2003
DOTRFS            15:10

MAIL

AMOUNT PAID   $   16.00

After Recordation Return to:
  COMPASS BANK
  P. O. Box 10566
  Birmingham, AL 35296

# HOME EQUITY LINE DEED OF TRUST
## ASSIGNMENT OF RENTS AND FIXTURE FILING

*4/4/02/5 kAK*

| BORROWER |
|---|
| ROBERT C GUTIERREZ |
| ROSE MARIE GUTIERREZ |

**ADDRESS**
2240 N VIA DE SUENOS
TUCSON, AZ  85745
TELEPHONE NO.          IDENTIFICATION NO.

| GRANTOR/TRUSTOR |
|---|
| ROBERT C GUTIERREZ, AND SPOUSE |
| ROSE MARIE GUTIERREZ |

**ADDRESS**
2240 N VIA DE SUENOS
TUCSON, AZ  85745
TELEPHONE NO.          IDENTIFICATION NO.

TRUSTEE: COMPASS BANK
         P. O. Box 52180, Phoenix, AZ 85072

In consideration of the loan or other credit accommodation hereinafter specified and any future advances or future Obligations, as defined herein, which may hereafter be advanced or incurred and the trust hereinafter mentioned and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby irrevocably bargains, sells, transfers, grants, conveys and assigns to Trustee, his successors and assigns, in trust, for—— Compass Bank , 2850 E. Camelback Road #140, Phoenix, AZ 85016
——————————————————————————————————————————————— ("Lender"), the beneficiary under this Deed of Trust, with power of sale and right of entry and possession all of Grantor's present and future estate, right, title and interest in and to the real property described in Schedule A which is attached to this Deed of Trust and incorporated herein by this reference, together with all present and future improvements and fixtures; all tangible personal property including, without limitation, all machinery, equipment, building materials, and goods of every nature (excluding household goods) now or hereafter located on or used in connection with the real property, whether or not affixed to the land; all privileges, hereditaments, and appurtenances; all leases, licenses and other agreements; all rents, issues and profits; all water, well, ditch, reservoir and mineral rights and stocks pertaining to the real property (cumulatively "Property"); to have and to hold the Property and all rights hereby granted for the use and benefit of Trustee, his successors and assigns, until payment in full of all Obligations secured hereby.

| INTEREST RATE | PRINCIPAL AMOUNT/ CREDIT LIMIT | FUNDING/ AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| VARIABLE | $250,000.00 | 02/11/03 | 02/11/38 | | 5576000038598 |

Moreover, in further consideration, Grantor does, for Grantor and Grantor's heirs, representatives, successors, and assigns, hereby expressly warrant, covenant, and agree with Lender and Trustee and their successors and assigns as follows:

**1. OBLIGATIONS.** This Deed of Trust shall secure the payment and performance of all present and future indebtedness, liabilities, obligations and covenants of Borrower or Grantor (cumulatively "Obligations") to Lender pursuant to:

  (a) this Deed of Trust and the following promissory notes and other agreements:

  (b) all other present or future written agreements with Lender which refer specifically to this Deed of Trust (**whether executed for the same or different purposes than the foregoing**) ;

  (c) any guaranty of obligations of other parties given to Lender now or hereafter executed which refers to this Deed of Trust:

(d) future advances, whether obligatory or optional, to the same extent as if made contemporaneously with the execution of this Deed of Trust, made or extended to or on behalf of Grantor or Borrower. Grantor agrees that if one of the Obligations is a line of credit, the lien of this Deed of Trust shall continue until payment in full of all debt due under the line notwithstanding the fact that from time to time (but before termination of the line) no balance may be outstanding. At no time shall the lien of this Deed of Trust, not including amounts advanced to protect the security of this Deed of Trust, exceed $ 250,000.00 ; and

(e) all amendments, extensions, renewals, modifications, replacements or substitutions to any of the foregoing.

As used in this Paragraph 1, the terms Grantor and Borrower shall include and also mean any Grantor or Borrower if more than one.

## 2. REPRESENTATIONS, WARRANTIES AND COVENANTS. Grantor represents, warrants and covenants to Lender that:

(a) Grantor has fee simple marketable title to the Property and shall maintain the Property free of all liens, security interests, encumbrances and claims except for this Deed of Trust and those described in Schedule B which is attached to this Deed of Trust and incorporated herein by reference, which Grantor agrees to pay and perform in a timely manner;

(b) Grantor is in compliance in all respects with all applicable federal, state and local laws and regulations, including, without limitation, those relating to "Hazardous Materials," as defined herein, and other environmental matters (the "Environmental Laws"), and neither the federal government nor the state where the Property is located nor any other governmental or quasi governmental entity has filed a lien on the Property, nor are there any governmental, judicial or administrative actions with respect to environmental matters pending, or to the best of the Grantor's knowledge, threatened, which involve the Property. Neither Grantor nor, to the best of Grantor's knowledge, any other party has used, generated, released, discharged, stored, or disposed of any Hazardous Materials as defined herein, in connection with the Property or transported any Hazardous Materials to or from the Property. Grantor shall not commit or permit such actions to be taken in the future. The term "Hazardous Materials" shall mean any substance, material, or waste which is or becomes regulated by any governmental authority including, but not limited to: (i) petroleum; (ii) friable or nonfriable asbestos; (iii) polychlorinated biphenyls; (iv) those substances, materials or wastes designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act or listed pursuant to Section 307 of the Clean Water Act or any amendments or replacements to these statutes; (v) those substances, materials or wastes defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act or any amendments or replacements to that statute; and (vi) those substances, materials or wastes defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, or any amendments or replacements to that statute or any other similar state or federal statute, rule, regulation or ordinance now or hereafter in effect. Grantor shall not lease or permit the sublease of the Property to a tenant or subtenant whose operations may result in contamination of the Property with Hazardous Materials or toxic substances;

(c) All applicable laws and regulations including, without limitation, the Americans with Disabilities Act, 42 U.S.C. 12101 et seq. (and all regulations promulgated thereunder) and all zoning and building laws and regulations relating to the Property by virtue of any federal, state or municipal authority with jurisdiction over the Property, presently are and shall be observed and complied with in all material respects, and all rights, licenses, permits, and certificates of occupancy (including but not limited to zoning variances, special exceptions for nonconforming uses, and final inspection approvals), whether temporary or permanent, which are material to the use and occupancy of the Property, presently are and shall be obtained, preserved and, where necessary, renewed;

(d) Grantor has the right and is duly authorized to execute and perform its Obligations under this Deed of Trust and these actions do not and shall not conflict with the provisions of any statute, regulation, ordinance, rule of law, contract or other agreement which may be binding on Grantor at any time;

(e) No action or proceeding is or shall be pending or threatened which might materially affect the Property; and

(f) Grantor has not violated and shall not violate any statute, regulation, ordinance, rule of law, contract or other agreement which might materially affect the Property (including, but not limited to, those governing Hazardous Materials) or Lender's rights or interest in the Property pursuant to this Deed of Trust.

## 3. PRIOR DEEDS OF TRUST. Grantor represents and warrants that there are no prior deeds of trust affecting any part of the Property except as set forth on Schedule B attached to this Deed of Trust which Grantor agrees to pay and perform in a timely manner. If there are any prior deeds of trust then Grantor agrees to pay all amounts owed, and perform all obligations required, under such deeds of trust and the indebtedness secured thereby.

## 4. TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN GRANTORS OR BORROWERS. In the event of a sale, conveyance, lease, contract for deed or transfer to any person of all or any part of the real property described in Schedule A, or any interest therein, or of all or any beneficial interest in Borrower or Grantor (if Borrower or Grantor is not a natural person or persons but is a corporation, limited liability company, partnership, trust, or other legal entity), Lender may, at its option, declare the outstanding principal balance of the Obligations plus accrued interest thereon immediately due and payable. At Lender's request, Grantor or Borrower, as the case may be, shall furnish a complete statement setting forth all of its stockholders, members or partners, as appropriate, and the extent of their respective ownership interests.

## 5. ASSIGNMENT OF RENTS. In consideration of the Obligations which are secured by this Deed of Trust, Grantor absolutely assigns to Lender all Grantor's estate, right, title, interest claim and demand now owned or hereafter acquired in all existing and future leases of the Property (including extensions, renewals and subleases), all agreements for use and occupancy of the Property (all such leases and agreements whether written or oral, are hereafter referred to as the "Leases"), and all guaranties of lessees' performance under the Leases, together with the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues, profits and other income of any nature now or hereafter due (including any income of any nature coming due during any redemption period) under the Leases or from or arising out of the Property, including minimum rents, additional rents, percentage rents, parking or common area maintenance contributions, tax and insurance contributions, deficiency rents, liquidated damages following default in any Lease, all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Property, all proceeds payable as a result of a lessee's exercise of an option to purchase the Property, all proceeds derived from the termination or rejection of any Lease in a bankruptcy or other insolvency proceeding, and all proceeds from any rights and claims of any kind which Grantor may have against any lessee under the Leases or any occupants of the Property (all of the above are hereafter collectively referred to as the "Rents"). This assignment is subject to the right, power and authority given to the Lender to collect and apply the Rents. This assignment is recorded in accordance with applicable state law; the lien created by this assignment is intended to be specific, perfected, and choate upon the recording of this Deed of Trust, all as provided by applicable state law as amended from time to time. As long as there is no default under the Obligations in this Deed of Trust, Lender grants Grantor a revocable license to collect all Rents from the Leases when due and to use such proceeds in Grantor's business operations. However, Lender may at any time require Grantor to deposit all Rents into an account maintained by Grantor or Lender at Lender's institution. Upon default in the payment of, or in the performance of, any of the Obligations, Lender may at its option take possession of the Property and have, hold, manage, lease and operate the Property on terms and for a period of time that Lender deems proper. Lender may proceed to collect and receive all Rents, from the Property, and Lender shall have full power to periodically make alterations, renovations, repairs or replacements to the Property as Lender may deem proper. Lender may apply all Rents in Lender's sole discretion, to payment of the Obligation or to the payment of the cost of such alterations, renovations, repairs and replacements and any expenses

incident to taking and retaining possession of the Property and the management and operation of the Property. Lender may keep the Property properly insured and may discharge any taxes, charges, claims, assessments and other liens which may accrue. The expense and cost of these actions may be paid from the Rents received, and any unpaid amounts shall be added to the principal of the Obligations. These amounts, together with other costs, shall become part of the Obligations secured by this Deed of Trust.

**6. LEASES AND OTHER AGREEMENTS.** Grantor shall not take or fail to take any action which may cause or permit the termination or the withholding of any payment in connection with any Lease pertaining to the Property. In addition, Grantor, without Lender's prior written consent, shall not: (a) collect any monies payable under any Lease more than one month in advance; (b) modify any Lease; (c) assign or allow a lien, security interest or other encumbrance to be placed upon Grantor's rights, title and interest in and to any Lease or the amounts payable thereunder; or (d) terminate or cancel any Lease except for the nonpayment of any sum or other material breach by the other party thereto. If Grantor receives at any time any written communication asserting a default by Grantor under a Lease or purporting to terminate or cancel any Lease, Grantor shall promptly forward a copy of such communication (and any subsequent communications relating thereto) to Lender. All such Leases and the amounts due to Grantor thereunder are hereby assigned to Lender as additional security for the Obligations.

**7. COLLECTION OF INDEBTEDNESS FROM THIRD PARTY.** Lender shall be entitled to notify or require Grantor to notify any third party (including, but not limited to, lessees, licensees, governmental authorities and insurance companies) to pay Lender any indebtedness or obligation owing to Grantor with respect to the Property (cumulatively "Indebtedness") whether or not a default exists under this Deed of Trust. Grantor shall diligently collect the Indebtedness owing to Grantor from these third parties until the giving of such notification. In the event that Grantor possesses or receives possession of any instruments or other remittances with respect to the Indebtedness following the giving of such notification or if the instruments or other remittances constitute the prepayment of any Indebtedness or the payment of any insurance or condemnation proceeds, Grantor shall hold such instruments and other remittances in trust for Lender apart from its other property, endorse the instruments and other remittances to Lender, and immediately provide Lender with possession of the instruments and other remittances. Lender shall be entitled, but not required, to collect (by legal proceedings or otherwise), extend the time for payment, compromise, exchange or release any obligor or collateral, or otherwise settle any of the Indebtedness whether or not an Event of Default exists under this Deed of Trust. Lender shall not be liable to Grantor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom. Notwithstanding the foregoing, nothing herein shall cause Lender to be deemed a mortgagee-in-possession.

**8. USE AND MAINTENANCE OF PROPERTY.** Grantor shall take all actions and make any repairs needed to maintain the Property in good condition. Grantor shall not commit or permit any waste to be committed with respect to the Property. Grantor shall use the Property solely in compliance with applicable law and insurance policies. Grantor shall not make any alterations, additions or improvements to the Property without Lender's prior written consent. Without limiting the foregoing, all alterations, additions and improvements made to the Property shall be subject to the beneficial interest belonging to Lender, shall not be removed without Lender's prior written consent, and shall be made at Grantor's sole expense.

**9. LOSS OR DAMAGE.** Grantor shall bear the entire risk of any loss, theft, destruction or damage (cumulatively "Loss or Damage") to the Property or any portion thereof from any cause whatsoever. In the event of any Loss or Damage, Grantor shall, at the option of Lender, repair the affected Property to its previous condition or pay or cause to be paid to Lender the decrease in the fair market value of the affected Property.

**10. INSURANCE.** The Property will be kept insured for its full insurable value (replacement cost) against all hazards including loss or damage caused by flood, earthquake, tornado and fire, theft or other casualty to the extent required by Lender. Grantor may obtain insurance on the Property from such companies as are acceptable to Lender in its sole discretion. The insurance policies shall require the insurance company to provide Lender with at least __30__ days' written notice before such policies are altered or cancelled in any manner. The insurance policies shall name Lender as a loss payee and provide that no act or omission of Grantor or any other person shall affect the right of Lender to be paid the insurance proceeds pertaining to the loss or damage of the Property. In the event Grantor fails to acquire or maintain insurance, Lender (after providing notice as may be required by law) may in its discretion procure appropriate insurance coverage upon the Property and the insurance cost shall be an advance payable and bearing interest as described in Paragraph 21 and secured hereby. Grantor shall furnish Lender with evidence of insurance indicating the required coverage. Lender may act as attorney-in-fact for Grantor in making and settling claims under insurance policies, cancelling any policy or endorsing Grantor's name on any draft or negotiable instrument drawn by any insurer. All such insurance policies shall be immediately assigned, pledged and delivered to Lender as further security for the Obligations. In the event of loss, Grantor shall immediately give Lender written notice and Lender is authorized to make proof of loss. Each insurance company is directed to make payments directly to Lender instead of to Lender and Grantor. Lender shall have the right, at its sole option, to apply such monies toward the Obligations or toward the cost of rebuilding and restoring the Property. Any amounts may at Lender's option be applied in the inverse order of the due dates thereof.

**11. ZONING AND PRIVATE COVENANTS.** Grantor shall not initiate or consent to any change in the zoning provisions or private covenants affecting the use of the Property without Lender's prior written consent. If Grantor's use of the Property is or becomes a nonconforming use under any zoning provision, Grantor shall not cause or permit such use to be discontinued or abandoned without the prior written consent of Lender. Grantor will immediately provide Lender with written notice of any proposed changes to the zoning provisions or private covenants affecting the Property.

**12. CONDEMNATION.** Grantor shall immediately provide Lender with written notice of any actual or threatened condemnation or eminent domain proceeding pertaining to the Property. All monies payable to Grantor from such condemnation or taking are hereby assigned to Lender and shall be applied first to the payment of Lender's attorneys' fees, legal expenses and other costs (including appraisal fees) in connection with the condemnation or eminent domain proceedings and then, at the option of Lender, to the payment of the Obligations or the restoration or repair of the Property.

**13. LENDER'S RIGHT TO COMMENCE OR DEFEND LEGAL ACTIONS.** Grantor shall immediately provide Lender with written notice of any actual or threatened action, suit, or other proceeding affecting the Property. Grantor hereby appoints Lender as its attorney-in-fact to commence, intervene in, and defend such actions, suits, or other legal proceedings and to compromise or settle any claim or controversy pertaining thereto. Lender shall not be liable to Grantor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom. Nothing contained herein will prevent Lender from taking the actions described in this paragraph in its own.

**14. INDEMNIFICATION.** Lender shall not assume or be responsible for the performance of any of Grantor's obligations with respect to the Property under any circumstances. Grantor shall immediately provide Lender with written notice of and indemnify and hold Lender and its shareholders, directors, officers, employees and agents harmless from all claims, damages, liabilities (including attorneys' fees and legal expenses), causes of action, actions, suits and other legal proceedings (cumulatively "Claims") pertaining to the Property (including, but not limited to, those involving Hazardous Materials). Grantor, upon the request of Lender, shall hire legal counsel, acceptable to Lender, to defend Lender from such Claims, and pay the attorneys' fees, legal expenses and other costs incurred in connection therewith. In the alternative, Lender shall be entitled to employ its own legal counsel to defend such Claims at Grantor's cost. Grantor's obligation to indemnify Lender under this paragraph shall survive the termination, release or foreclosure of this Deed of Trust.

**15. TAXES AND ASSESSMENTS.** Grantor shall pay all taxes and assessments relating to the Property when due and immediately provide Lender evidence of payment of same. Upon the request of Lender, Grantor shall deposit with Lender each month one-twelfth (1/12) of the estimated annual insurance premium, taxes and assessments pertaining to the Property. So long as there is no default, these amounts shall be applied to the payment of taxes, assessments and insurance as required on the Property. In the event of default, Lender shall have the right, at its sole option, to apply the funds so held to pay any taxes or against the Obligations. Any funds applied may, at Lender's option, be applied in reverse order of the due date thereof.

**16. INSPECTION OF PROPERTY, BOOKS, RECORDS AND REPORTS.** Grantor shall allow Lender or its agents to examine and inspect the Property and examine, inspect and make copies of Grantor's books and records pertaining to the Property from time to time. Grantor shall provide any assistance required by Lender for these purposes. All of the signatures and information contained in Grantor's books and records shall be genuine, true, accurate and complete in all respects. Grantor shall note the existence of Lender's beneficial interest in its books and records pertaining to the Property. Additionally, Grantor shall report, in a form satisfactory to Lender, such information as Lender may request regarding Grantor's financial condition or the Property. The information shall be for such periods, shall reflect Grantor's records at such time, and shall be rendered with such frequency as Lender may designate. All information furnished by Grantor to Lender shall be true, accurate and complete in all respects, and signed by Grantor if Lender requests.

**17. ESTOPPEL CERTIFICATES.** Within ten (10) days after any request by Lender, Grantor shall deliver to Lender, or any intended transferee of Lender's rights with respect to the Obligations, a signed and acknowledged statement specifying (a) the outstanding balance on the Obligations; and (b) whether Grantor possesses any claims, defenses, set-offs or counterclaims with respect to the Obligations and, if so, the nature of such claims, defenses, set-offs or counterclaims. Grantor will be conclusively bound by any representation that Lender may make to the intended transferee with respect to these matters in the event that Grantor fails to provide the requested statement in a timely manner.

**18. EVENTS OF DEFAULT.** An Event of Default shall occur under this Deed of Trust and the Trustee's power shall become operative in the event that Grantor, Borrower or any guarantor of any Obligation:

(a) commits fraud or makes a material misrepresentation at any time in connection with the Obligations or this Deed of Trust;

(b) fails to meet the repayment terms of the Obligations for any outstanding balance; or

(c) by any action or inaction, adversely affects the Property, or any right of Lender in such Property, including, but not limited to, transfer of title to or sale of the Property without the permission of Lender, failure to maintain required insurance or to pay taxes on the Property, allowing the filing of a lien senior to that held by Lender, death of the sole Borrower obligated under the Obligations, allowing the taking of the Property through eminent domain, or allowing the Property to be foreclosed by a lienholder other than Lender. In addition, an Event of Default shall occur if, as a result of any of the following, the property, or any right of the Lender in the Property, is adversely affected: the Borrower, Grantor or any guarantor of any Obligation commits waste or otherwise destructively uses or fails to maintain the Property, uses the property in an illegal manner which may subject the Property to seizure, or moves from the Property; a judgment is filed against the Borrower, Grantor or any guarantor of any Obligation; or one of two Borrowers obligated under the Obligations dies.

**19. RIGHTS OF LENDER ON EVENT OF DEFAULT.** Upon the occurrence of an Event of Default under this Deed of Trust, Lender shall be entitled to exercise one or more of the following remedies without notice or demand (except as required by law):

(a) to declare the Obligations immediately due and payable in full, such acceleration shall be automatic and immediate if the Event of Default is a filing under the Bankruptcy Code;

(b) to collect the outstanding Obligations with or without resorting to judicial process;

(c) to require Grantor to deliver and make available to Lender any personal property or Chattels constituting the Property at a place reasonably convenient to Grantor and Lender;

(d) to enter upon and take possession of the Property without applying for or obtaining the appointment of a receiver and, at Lender's option, to appoint a receiver without bond, without first bringing suit on the Obligations and without otherwise meeting any statutory conditions regarding receivers, it being intended that Lender shall have this contractual right to appoint a receiver;

(e) to employ a managing agent of the Property and let the same, either in Trustee's own name, in the name of Lender or in the name of Grantor, and receive the rents, incomes, issues and profits of the Property and apply the same, after payment of all necessary charges and expenses, on account of the Obligations;

(f) to pay any sums in any form or manner deemed expedient by Lender to protect the security of this Deed of Trust or to cure any default other than payment of interest or principal on the Obligations;

(g) to foreclose this Deed of Trust judicially or nonjudicially;

(h) to set-off Grantor's Obligations against any amounts owed Grantor by Lender including, but not limited to, monies, instruments, and deposit accounts maintained with Lender or any currently existing or future affiliate of Lender; and

(i) to exercise all other rights available to Lender under any other written agreement or applicable law.

Lender's rights are cumulative and may be exercised together, separately, and in any order. In the event that Lender institutes an action seeking the recovery of any of the Property by way of a prejudgment remedy in an action against Grantor, Grantor waives the posting of any bond which might otherwise be required. Lender or Lender's designee may purchase the Property at any sale. In the event Lender purchases the Property at the Trustee's sale, to the extent Lender's bid price exceeds the Obligations, Lender shall pay Trustee cash equal to such excess. The Property or any part thereof may be sold in one parcel, or in such parcels, manner or order as Lender in its sole discretion may elect, and one or more exercises of the power herein granted shall not extinguish or exhaust the power unless the entire Property is sold, or the Obligations are paid in full.

**20. SECURITY INTEREST UNDER THE UNIFORM COMMERCIAL CODE.** This Deed of Trust shall be considered a financing statement and a fixture filing pursuant to the provisions of the Uniform Commercial Code (as adopted in the state where the Property is located) covering fixtures chattels, and articles of personal property now owned or hereafter attached to or to be used in connection with the Property together with any and all replacements thereof and additions thereto (the "Chattels"), and Grantor hereby grants Lender a security interest in such Chattels. The debtor is the Grantor described above. The secured party is the Lender described above. Upon demand, Grantor shall make, execute and deliver such security agreements (as such term is defined in said Uniform Commercial Code) as Lender at any time may deem necessary or proper or require to grant to Lender a perfected security interest in the Chattels, and upon Grantor's failure to do so, Lender is authorized to sign any such agreement as the agent of Grantor. Grantor hereby authorizes Lender to file financing statements (as such term is defined in said Uniform Commercial Code) with respect to the Chattels, at any time, without the signature of Grantor. Grantor will, however, at any time upon request of Lender, sign such financing statements. Grantor will pay all filing fees for the filing of such financing statements and for the refiling thereof at the times required, in the opinion of Lender, by said Uniform Commercial Code. If the lien of this Deed of Trust is subject to any security agreement covering the Chattels, then in the event of any default under this Deed of Trust, all the right, title and interest of Grantor in and to any and all of the Chattels is hereby assigned to Lender, together with the benefit of any deposits or payments now or hereafter made thereof by Grantor or the predecessors or successors in title of Grantor in the Property.

**21. REIMBURSEMENT OF AMOUNTS EXPENDED BY LENDER.** Lender, at Lender's option, may expend funds (including attorneys' fees and legal expenses), to perform any act required to be taken by Grantor or to exercise any right or remedy of Lender under this Deed of Trust. Upon demand, Grantor shall immediately reimburse Lender for all such amounts expended by Lender together with interest thereon at the lower of the highest rate described in any Obligation or the highest rate allowed by law from the date of payment until the date of reimbursement. These sums shall be included in the definition of Obligations herein and shall be secured by the beneficial interest granted herein. If the Obligations are paid after the beginning of publication of notice of sale, as herein provided, or in the event Lender shall, at its sole option, permit Grantor to pay any part of the Obligations after the beginning of publication of notice of sale, as herein provided, then, Grantor shall pay on demand all expenses incurred by the Trustee and Lender in connection with said publication, including reasonable attorneys' fees to the attorneys for the Trustee and for the Lender, and a reasonable fee to the Trustee, and this Deed of Trust shall be security for all such expenses and fees.

**22. APPLICATION OF PAYMENTS.** All payments made by or on behalf of Grantor may be applied against the amounts paid by Lender (including attorneys' fees and legal expenses) in connection with the exercise of its rights or remedies described in this Deed of Trust and then to the payment of the remaining Obligations in whatever order Lender chooses.

**23. POWER OF ATTORNEY.** Grantor hereby appoints Lender as its attorney-in-fact to endorse Grantor's name on all instruments and other documents pertaining to the Obligations or indebtedness. In addition, Lender shall be entitled, but not required, to perform any action or execute any document required to be taken or executed by Grantor under this Deed of Trust. Lender's performance of such action or execution of such documents shall not relieve Grantor from any Obligation or cure any default under this Deed of Trust. The powers of attorney described in this Deed of Trust are coupled with an interest and are irrevocable.

**24. SUBROGATION OF LENDER.** Lender shall be subrogated to the rights of the holder of any previous lien, security interest or encumbrance discharged with funds advanced by Lender regardless of whether these liens, security interests or other encumbrances have been released of record.

**25. COLLECTION COSTS.** To the extent permitted by law, Grantor agrees to pay Lender's reasonable fees and costs, including, but not limited to, fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants), whether or not such attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing any right or remedy under this Deed of Trust, whether or not suit is brought, including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, and for post-judgment collection actions.

**26. PARTIAL RELEASE.** Lender may release its interest in a portion of the Property by executing and recording one or more partial releases without affecting its interest in the remaining portion of the Property. Nothing herein shall be deemed to obligate Lender to release any of its interest in the Property (except as required under paragraph 35), nor shall Lender be obligated to release any part of the Property if Grantor is in default under this Deed of Trust.

**27. MODIFICATION AND WAIVER.** The modification or waiver of any of Grantor's Obligations or Lender's rights under this Deed of Trust must be contained in a writing signed by Lender. Lender may perform any of Borrower's or Grantor's Obligations, delay or fail to exercise any of its rights or accept payments from Grantor or anyone other than Grantor without causing a waiver of those Obligations or rights. A waiver on one occasion shall not constitute a waiver on any other occasion. Grantor's Obligations under this Deed of Trust shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases any of the Obligations belonging to any Grantor, Borrower or third party or any of its rights against any Grantor, Borrower or third party or any of the Property. Lender's failure to insist upon strict performance of any of the Obligations shall not be deemed a waiver, and Lender shall have the right at any time thereafter to insist upon strict performance.

**28. SUBSTITUTE TRUSTEE.** In case of the death, inability, refusal to act or absence of the Trustee from the state where the Property is located or in case the holder of the Obligations shall desire for any reason to remove the Trustee or any substitute trustee as trustee hereunder and to appoint a new trustee in his place and stead, the holder of the Obligations is hereby granted full power to appoint in writing a substitute trustee for said Trustee, and the substitute trustee shall, when appointed, become successor to all rights of Trustee hereunder and the same shall become vested in him for the purposes and objects of this Deed of Trust with all the power, duties and obligations herein conferred on the Trustee.

**29. SUCCESSORS AND ASSIGNS.** This Deed of Trust shall be binding upon and inure to the benefit of Grantor and Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees and devisees.

**30. NOTICES.** Except as otherwise required by law, any notice or other communication to be provided under this Deed of Trust shall be in writing and sent to the parties at the addresses described in this Deed of Trust or such other address as the parties may designate in writing from time to time. Any such notice so given and sent by first class mail, postage prepaid, shall be deemed given the earlier of three (3) days after such notice is sent when received by the person to whom such notice is being given.

**31. SEVERABILITY.** Whenever possible, each provision of this Deed of Trust shall be interpreted so as to be effective and valid under applicable state law. If any provision of this Deed of Trust violates the law or is unenforceable, the rest of this Deed of Trust shall continue to be valid and enforceable.

**32. APPLICABLE LAW.** This Deed of Trust shall be governed by the laws of the state where the Property is located. Unless applicable law provides otherwise, Grantor consents to the jurisdiction and venue of any court selected by Lender, in its sole discretion, located in that state.

**33. NO THIRD-PARTY RIGHTS.** No person is or shall be a third-party beneficiary of any provision of this Deed of Trust. All provisions of this Deed of Trust in favor of Lender are intended solely for the benefit of Lender, and no third party shall be entitled to assume or expect that Lender will waive or consent to the modification of any provision of this Deed of Trust, in Lender's sole discretion.

**34. PRESERVATION OF LIABILITY AND PRIORITY.** Without affecting the liability of Borrower, Grantor, or any guarantor of the Obligations, or any other person (except a person expressly released in writing) for the payment and performance of the Obligations, and without affecting the rights of Lender with respect to any Property not expressly released in writing, and without impairing in any way the priority of this Deed of Trust over the interest of any person acquired or first evidenced by recording subsequent to the recording of this Deed of Trust, Lender may, either before or after the maturity of the Obligations, and without notice or consent: release any person liable for payment or performance of all or any part of the Obligations; make any agreement altering the terms of payment or performance of all or any part of the Obligations; exercise or refrain from exercising or waive any right or remedy that Lender may have under this Deed of Trust; accept additional security of any kind for any of the Obligations; or release or otherwise deal with any real or personal property securing the Obligations. Any person acquiring or recording evidence of any interest of any nature in the Property shall be deemed, by acquiring such interest or recording any evidence thereof, to have consented to all or any such actions by Lender.

**35. DEFEASANCE.** Upon the payment and performance in full of all of the Obligations, Lender will execute and deliver to Grantor those documents that may be required to release this Deed of Trust of record. Grantor shall be responsible to pay any costs of recordation.

**36. WAIVER OF HOMESTEAD.** Grantor hereby waives all homestead exemptions in the Property to which Grantor would otherwise be entitled under any applicable law.

**37. MISCELLANEOUS.** Grantor is the Trustor under this Deed of Trust. Grantor and Lender agree that time is of the essence. Grantor waives presentment, demand for payment, notice of dishonor and protest except as required by law. All references to Grantor in this Deed of Trust shall include all persons signing below. If there is more than one Grantor, their Obligations shall be joint and several. This Deed of Trust represents the complete integrated understanding between Grantor and Lender pertaining to the terms and conditions hereof.

**38. JURY TRIAL WAIVER. LENDER AND GRANTOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY CIVIL ACTION ARISING OUT OF, OR BASED UPON, THIS DEED OF TRUST.**

**39. ADDITIONAL TERMS:**

Grantor acknowledges that Grantor has read, understands, and agrees to the terms and conditions of this Deed of Trust, and acknowledges receipt of an exact copy of same.

Dated this ___11th___ day of ___February, 2003_____

GRANTOR: **ROBERT C GUTIERREZ**

_____
ROBERT C GUTIERREZ

GRANTOR: **ROSE MARIE GUTIERREZ**

_____
ROSE MARIE GUTIERREZ

GRANTOR:

_____

GRANTOR:

_____

GRANTOR:

_____

GRANTOR:

_____

GRANTOR:

_____

GRANTOR:

_____

# Acknowledgments

STATE OF _AZ_

COUNTY OF _Pima_

The foregoing instrument was acknowledged before me this _February 14 2003_
by _ROBERT GUTIERREZ & ROSEMARY GUTIERREZ_

Signature of person taking acknowledgment _Kem Krsak_

Title or Rank

> OFFICIAL SEAL
> KEM KRSAK
> NOTARY PUBLIC-ARIZONA
> PIMA COUNTY
> My Comm. Exp. Mar. 23, 2006


STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____
by _____

_____
Signature of person taking acknowledgment

_____
Title or Rank


STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____
by _____

_____
Signature of person taking acknowledgment

_____
Title or Rank


STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____
by _____

_____
Signature of person taking acknowledgment

_____
Title or Rank


STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____
by _____

_____
Signature of person taking acknowledgment

_____
Title or Rank

LPAZ516G    © John H. Harland Co. (10/24/00) (800) 937-3799    Page 7 of 8

## SCHEDULE A

The following described real property located in the County of **PIMA**
State of **Arizona** :

LOT 59, OF VISTA DELA SIERRA DE DIOS, A SUBDIVISION OF PIMA
COUNTY, ARIZONA, ACCORDING TO THE MAP OR PLAT THEREOF OF RECORD
IN THE OFFICE OF THE COUNTY RECORDER OF PIMA COUNTY, ARIZONA, IN
BOOK 32 OF MAPS OR PLATS AT PAGE 21 THEREOF.
EXCEPT ALL COAL AND OTHER MINERAS AS RESERVED IN THE PATENT FROM THE UNITED STATES
OF AMERICA

## SCHEDULE B

1ST LIEN DEED OF TRUST: COMPASS BANK IN THE AMOUNT OF $100,340.38
DATED 2/11/2003.

THIS DOCUMENT WAS PREPARED BY: BARRON POLK 100 GREENSPRINGS HWY B'HAM AL 35209

# EXHIBIT 2


F. ANN RODRIGUEZ, RECORDER
RECORDED BY: JLW
           DEPUTY RECORDER
           1541       PE3
W
COMPASS BANK
PO BOX 10566
BIRMINGHAM AL 35296



DOCKET:          12187
PAGE:            1354
NO. OF PAGES:     2
SEQUENCE:  20032300418
           12/01/2003
RLIEN         11:58

MAIL

AMOUNT PAID  $  10.00

WHEN RECORDED MAIL TO

COMPASS BANK
COLLATERAL RELEASE
PO BOX 10566
BIRMINGHAM, AL 35296

MAIL CODE: AL-SC-LCL

**THE ABOVE SPACE RESERVED FOR RECORDING INFORMATION**

CAPTION HEADING

DO NOT REMOVE

THIS IS PART OF THE OFFICIAL DOCUMENT

RELEASE OF RECORDED LIEN

1
2
1
8
7

1
3
5
4

41-2100119806

This instrument prepared by:  STEPHANIE HOLYFIELD
                              Compass Bank, P. O. Box 10566
                              Birmingham, AL 35296
                              Collateral Release

## RELEASE OF RECORDED LIEN

STATE OF ARIZONA
COUNTY OF PIMA

NOTE:

| | |
|---|---|
| **Date:** | 04-11-2002 |
| **Amount:** | $ 100,000.00 DOLLARS |
| **Maker:** | PIMA |
| **Payee:** | COMPASS BANK |

Note and lien are described in the following documents, recorded in:

*DEED OF TRUST DOC # 11780 PG 3135*

*All in the official Public Records of Real Property of PIMA , Arizona.*

Property released from lien is legally described as follows:

AS RECORDED

Holder of the note acknowledges full payment and releases from the lien only the recorded items and property described above. When context requires, singular nouns and pronouns include the plural.

In Witness Whereof, COMPASS BANK, a corporation, has caused these presents to be executed this 3RD day of November, 2003.

                              COMPASS BANK

                              By _____
                              Peggy McGaughy
                              Loan Operations Manager

STATE OF ALABAMA

COUNTY OF JEFFERSON

This instrument was acknowledged before me this 3RD day of November, 2003, by Peggy McGaughy, Manager of COMPASS BANK, a banking corporation, on behalf of said corporation.

                              _____
                              Notary Public

After Recording Forward to:
ROBERT C. GUTIERREZ
2240 N. VIA DE SUENOS
TUCSON, AZ 85745-9029

# EXHIBIT 3

| E | F. ANN RODRIGUEZ, RECORDER | | DOCKET: | 12516 |
|---|---|---|---|---|
| A | RECORDED BY: HEM | | PAGE: | 2944 |
| S | DEPUTY RECORDER | | NO. OF PAGES: | 15 |
| T | 2057 ES4 | | SEQUENCE: | 20050570889 |
| S | TTISE | | | 03/24/2005 |
| S | COMPASS BANK | | DOT | 15:32 |
| I | PO BOX 10687 | | | |
| D | BIRMINGHAM AL 35202 | | MAIL | |
| E | | | | |
| | | | AMOUNT PAID $ | 20.00 |



Prepared By:
TYREE B BLACK

*205-66 yo* ——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

MIN 1002161-0000018113-7

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    MARCH 18, 2004               , together with all Riders to this document.
**(B) "Borrower"** is ROBERT C. GUTIERREZ and ROSE MARIE GUTIERREZ, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
2240 N VIA DE SUENOS, TUCSON, AZ 85745
**(C) "Lender"** is COMPASS BANK

Lender is a n ALABAMA STATE BANK
organized and existing under the laws of          THE STATE OF ALABAMA                 .

10GUTIERRRGSCM1                                      05522684-S                                   0
**ARIZONA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**   Form 3003  1/01 (rev. 6/02)

(VMP®) -6A(AZ) (0208)
Page 1 of 15        MW 06/02        Initials: *RCG*  *RG*

VMP MORTGAGE FORMS - (800)521-7291

Lender's mailing address is P.O. BOX 10687, BIRMINGHAM, AL 35202

**(D) "Trustee"** is TITLE SECURITY AGENCY OF ARIZONA

. Trustee's mailing address is

1840 E. RIVER RD STE 220, TUCSON, AZ 85718

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated       MARCH 18, 2004       .
The Note states that Borrower owes Lender TWO HUNDRED SEVENTY THOUSAND AND NO/100

Dollars

(U.S. $270,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than       APRIL 1, 2035       .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

1OGUTIERRRGSCM1                          05522684-S                          0
Initials:

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | PIMA | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

LOT 59 OF VISTA DE LA SIERRA DE DIOS, A SUBDIVISION OF PIMA COUNTY, ARIZONA, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE PIMA COUNTY RECORDER IN BOOK 32 OF MAPS AND PLATS AT PAGE 21.

Parcel ID Number: 116070810 2                          which currently has the address of
2240 N VIA DE SUENOS                                                                [Street]
TUCSON                                     [City] , Arizona      85745      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

10GUTIERRRGSCM1                              05522684-S*RCJ*    *R.J*  . 0
                                             Initials:

®-6A(AZ) (0206)                    Page 3 of 16              Form 3003  1/01 (rev. 6/02)

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

10GUTIERRRGSCM1                     05522684-S                              0

Initials: _ACH_    _G. A_

-6A(AZ) (0206)          Page 4 of 15          Form 3003  1/01  (rev. 6/02)

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

10GUTIERRRGSCM1

05522684-S

Initials: _ACH_  _QL_  . 0

-6A(AZ) (0206)          Page 6 of 15          Form 3003 1/01 (rev. 6/02)

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

10GUTIERRRGSCM1

05522684-S

Initials:

0

-6A(AZ) (0208)

Page 6 of 15

Form 3003 1/01 (rev. 6/02)

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

10GUTIERRRGSCM1                           05522684-S                            0

Initials: *R C ef* *(signatures)*

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

10GUTIERRRGSCM1

05522684-S    0

Initials: *RCH*    *GQA*

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

10GUTIERRRGSCM1

05522684-S

0

Initials: _RCH_ _R-J_

-6A(AZ) (0208)

Page 9 of 15

Form 3003  1/01 (rev. 6/02)

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

10GUTIERRRGSCM1        05522684-S        0

Initials:

-6A(AZ) (0206)       Page 10 of 15       Form 3003 1/01 (rev. 6/02)

Case 4:16-bk-11212-BMW    Doc 31    Filed 12/22/16    Entered 12/22/16 11:59:16    Desc
Main Document     Page 43 of 53

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

05522684-S

Initials: _____

0

-6A(AZ) (0206)                    Page 11 of 15                    Form 3003  1/01  (rev. 6/02)

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

1GUTIERRRGSCM1

-6A(AZ) (0206)     Page 12 of 15     05522684-     Initials:     Form 3003 1/01 (rev. 6/02)     0

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

10GUTIERRRGSCM1

05522684-S

Initials: _RCJ_   _QA_   . 0

-6A(AZ) (0208)

Page 13 of 15

Form 3003  1/01 (rev. 6/02)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _Robert C. Gutierrez_____ (Seal)
                                       ROBERT C. GUTIERREZ          -Borrower


_____     _Rose Marie Gutierrez_____ (Seal)
                                       ROSE MARIE GUTIERREZ         -Borrower


_____ (Seal)     _____ (Seal)
                          -Borrower                             -Borrower


_____ (Seal)     _____ (Seal)
                          -Borrower                             -Borrower


_____ (Seal)     _____ (Seal)
                          -Borrower                             -Borrower

10GUTIERRRGSCM1                    05522684-S                    0

VMP®-6A(AZ) (0206)          Page 14 of 15          Form 3003  1/01  (rev. 6/02)

**STATE OF ARIZONA,** County ss: *Pima*

The foregoing instrument was acknowledged before me this *18th day of March 2005*
by ROBERT C. GUTIERREZ and ROSE MARIE GUTIERREZ

My Commission Expires: *1-1-07*

OFFICIAL SEAL
Y. CLARK
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm. Exp. Nov. 1, 2007

Notary Public

1OGUTIERRRGSCM1

05522684-S

Initials: *RCG*

0

-6A(AZ) (0208)

Page 16 of 16

Form 3003    1/01    (rev. 6/02)

# EXHIBIT 4

E
A
S
T
S
I
D
E

F. ANN RODRIGUEZ, RECORDER
RECORDED BY: JLW
            DEPUTY RECORDER
            1541    ES4
TTISE
TITLE SECURITY
PICKUP



DOCKET:         12661
PAGE:            1090
NO. OF PAGES:        1
SEQUENCE:    20052020169
             10/18/2005
RECON            10:28

PICKUP
AMOUNT PAID   $   9.00

**Escrow No:** 80120045-YC
**Title No:** 2-05-666

## RELEASE AND RECONVEYANCE BY TITLE INSURER OF
## DEED OF TRUST PURSUANT TO A.R.S. §33-707.E

Pursuant to the provisions of Section 33-707.E of the Arizona Revised Statues, the undersigned Title Insurer hereby releases and reconveys the following Deed of Trust:

BENEFICIARY (OR SUCCESSOR IN INTEREST): COMPASS BANK

TRUSTEE (OR SUCCESSOR IN INTEREST): COMPASS BANK

ORIGINAL TRUSTOR: ROBERT C. GUTIERREZ AND SPOUSE, ROSE MARIE GUTIERREZ

SERVICING AGENT: COMPASS BANK

CURRENT RECORD OWNER OF THE PROPERTY: ROBERT C. GUTIERREZ AND ROSE MARIE GUTIERREZ, HUSBAND AND WIFE, AS COMMUNITY PROPERTY WITH RIGHTS OF SURVIVORSHIP

RECORDED in the Office of the County Recorder of Pima County, State of Arizona:

    Recording Date:  February 19, 2003
    in Docket: 11990, page:       1236,

DATE AND AMOUNT OF PAYMENT:  March 23, 2005 – 243,093.92

The undersigned has actual knowledge that the obligation secured by this Deed of Trust has been paid in full.

This release and reconveyance shall constitute a release or satisfaction of Deed of Trust issued pursuant to A.R.S.
§33-707.E

DATED: OCT 1 7 2005

                    TITLE INSURER:

                    COMMONWEALTH LAND TITLE INSURANCE COMPANY

                    BY:  TITLE SECURITY AGENCY OF ARIZONA, AN ARIZONA
                    CORPORATION

                    AS ATTORNEY-IN-FACT

                    ___Leslie  d  Hoy_____

                    By: Leslie D. Hogg, Trust Officer

STATE OF ARIZONA          }
                          }  ss
County of Pima            }

This Release and Reconveyance by Title Insurer of Deed of Trust pursuant to A.R.S. §33-707.E was acknowledged before me this _17_ day of _October_, 2005 by LESLIE D. HOGG, as the TRUST OFFICER of Title Security Agency of Arizona, an Arizona corporation, Agent and Attorney-in-Fact for Commonwealth Land Title Insurance Company

                    _Roberta L. Malcolm_____
                    Roberta L. Malcolm          Notary Public

My commission expires:_12-22-06_

NOTARY SEAL
NOTARY PUBLIC
STATE OF ARIZONA
COUNTY OF PIMA

# EXHIBIT 5

F. ANN RODRIGUEZ, RECORDER
Recorded By: JKP
                    DEPUTY RECORDER
                    4889

MAIL
WELLS FARGO BANK
MAC X9999 018
PO BOX 1629
MINNEAPOLIS MN  55440



| | |
|---|---|
| SEQUENCE: | 20112631031 |
| NO. PAGES: | 2 |
| ASDOT | 09/20/2011 |
| | 18:00 |
| MAIL | |
| AMOUNT PAID: | $10.00 |

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790



## CORPORATE ASSIGNMENT OF DEED OF TRUST

Pima, Arizona
SELLER'S SERVICING #:0633524202 "GUTIERREZ"

MERS #: 1002161-0000018113-7 SIS #: 1-888-679-6377

Date of Assignment: September 16th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR COMPASS BANK, ITS SUCCESSORS AND ASSIGNS at BOX 2026
FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL  61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA  50328

Executed By: ROBERT C. GUTIERREZ AND ROSE MARIE GUTIERREZ, HUSBAND
AND WIFE, To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR COMPASS BANK, ITS SUCCESSORS AND ASSIGNS
Date of Deed of Trust:  03/18/2004 Recorded:  03/24/2005  in Book/Reel/Liber: 12516
Page/Folio: 2944 as Instrument No.: 20050570889  In the County of Pima, State of
Arizona.

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration,
the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby
assigns unto the above-named Assignee, the said Deed of Trust having an original
principal sum of $270,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all
the powers and of all the covenants and provisos therein contained, and the said
Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial
interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the
said Assignee forever, subject to the terms contained in said Deed of Trust.  IN
WITNESS WHEREOF, the assignor has executed these presents the day and year first
above written:

  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
COMPASS BANK, ITS SUCCESSORS AND ASSIGNS
On ___*9/16/11*___

By: _____
_____ ,
Assistant  Secretary

*SC*SCWFEM*09/16/2011 01:06:02 PM* WFEM01WFEMA00000000000000173115* AZPIMA* 0633524202 AZSTATE_TRUST_ASSIGN_ASSN **BCWFEM*

STATE OF Minnesota
COUNTY OF Dakota

On ___9/16/11___, before me, ____Julie Ann Prieto_____, a Notary Public in and for Dakota in the State of Minnesota, personally appeared _Bhavdip Chauhan_____, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

JULIE ANN PRIETO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

Notary Expires: 1/31 2014

(This area for notarial seal)